[Civ. No. 9773. Fourth Dist. Div. One. Mar. 30, 1971.]

PATRICIA ATKINS, Plaintiff and Appellant, v.
BEN BISIGIER et al., Defendants and Respondents.

**COUNSEL**

Reed & Brockway, William F. Reed, Belli, Ashe, Ellison, Choulos & Lieff, David Kogus and Robert L. Lieff for Plaintiff and Appellant.

Shield & Smith, Royal M. Miller and Abe Mutchnik for Defendants and Respondents.

**OPINION**

**AULT, J.**—Patricia Atkins sustained severe and permanent personal injuries on May 27, 1967, when she dove into a swimming pool maintained in connection with the Saddleback Villa Apartments in Tustin, California. The apartment complex and pool were owned by B. & B. Group Number 10, a co-partnership consisting of five individual partners. Mrs. Atkins filed a complaint against the partnership and the individual partners, charging negligence and seeking to recover $1,000,000 in damages. The defendants answered, denying negligence and pleading contributory negligence as an affirmative defense. A jury trial resulted in a unanimous defense verdict. Mrs. Atkins' motion for new trial was denied and she has appealed from the judgment entered on the verdict.

Respondents purchased the apartment house complex in October 1966. Already constructed on the property, next to a recreation hall, was a large shallow swimming pool of unusual design. It was roughly triangular in shape with its base, approximately 54 feet in length, running parallel to the recreation hall. At each end of the base, where the sides joined, the angles were stubbed off by wide steps leading down into the pool. The third corner, opposite the center of the base, was rounded off to form a curve. The distance from the center of the base to the curve was approximately 26 feet.

Depth markers around the sides of the pool at water level indicated the water varied in depth from 3 feet along the base and at both sides of the steps to 6 feet at the curve. Actually the water depth was somewhat less than indicated by the markers. With the water level of the pool at the center of the tiles around its edges, the deepest point in the pool was at the drain where the water was approximately 5.25 feet deep. The drain was located about 4 feet out from the center of the curve opposite the base and the entire pool sloped, like a bowl, toward this low point with no sudden break in the slope. There were no depth markers on the edge of the deck or the walls next to the pool. There were fixtures for attaching a rope and buoys across the pool in a line parallel to the base. There was no diving board.

On the night of May 27, 1967, two of the respondents' tenants, Jeffrey Jay Wollaston and Bill McEwen, held a party in the recreation room, with the permission of the apartment manager, Mrs. Mosely. Appellant, age 40, was an invited guest at the party. She testified she consumed two or three drinks of vodka-brandy-wine punch, and possibly one vodka tonic during the evening. About 9 p.m. she and another guest, David Lathrop, decided to go swimming. After changing into swimsuits, Lathrop dove into the pool, and plaintiff walked in, using the steps at the right end of the pool as she faced it from the recreation room side. For at least 30 minutes and perhaps an hour, she swam around in the pool. Plaintiff, an excellent swimmer, swam across the width of the pool numerous times. She testified she swam in only the right half of the pool, which she found to be shallow but gradually getting deeper toward the center. She assumed the far end of the pool was deep. Lathrop left to obtain cigarettes, leaving plaintiff sitting on the deck adjacent to the area where she had been swimming. The air felt colder than the water; she became cold and dove into the water from the deck near the center of the curved side toward the far corner, which she assumed to be the deep end of the pool. Her head hit the concrete, and she blacked out. When Lathrop returned a few moments later, plaintiff was floating, face down, in the center of the pool. Her spinal cord was so severely damaged she is now permanently a quadriplegic.

At the time of the accident, the rope and buoys were not in use, but were hanging on the recreation room wall. While in conflict, there was testimony the pool was lighted by two floodlights on the recreation room building and two underwater lights. Plaintiff testified she had previously stood in the pool, near the point at which she dove, and had found the water about shoulder deep. She also stated the area of the pool toward which she dove appeared darker and deeper than the area of the pool where she had been swimming. She had been taught in Red Cross and Girl Scout classes "to know your water, what to expect," "You should not dive into water unless it looked visibly deep." Sammy Lee, a champion Olympic diver called as a witness by plaintiff, testified it was a "cardinal rule in swimming and diving" that in unfamiliar water, "always go in feet first." He also testified the function of a rope and buoys was to mark the place where the pool changes from shallow to deep.

Early in the trial, the court informed the jury certain safety laws and regulations, to which counsel had referred, might, or might not, be relevant to the issues, depending upon evidence to be presented. During the trial appellant's attorney urged, and introduced evidence to show, respondents' pool violated the following safety regulations found in California Administrative Code, title 17, article 2:

*Section 7788* in that: It lacked depth markers on the deck, required of pools more than 20 feet wide; the numbers on the side of the pool were partially obscured by the water level; the depth markers indicated the water in the pool was deeper than it actually was.

*Section 7809* in that the lighting of the pool was inadequate.

*Section 7786* in that: The slope was steeper than specified for a pool exceeding 20 feet in width (it was 1 foot in 10 feet and should have been 1 foot in 12 feet); the pool did not have a rope and buoys separating the deep from the shallow section of the pool. Appellant also contended the pool violated California Health and Safety Code section 24101.2 and was a public nuisance under section 24106 of that code.

After advising the jury the swimming pool in question was a "public pool" as a matter of law, the trial court gave jury instructions based upon the provisions of Health and Safety Code section 24101.2 and on sections 7788 and 7809 of title 17, article 2, of the Administrative Code, requiring depth markers and adequate lighting.[1] ■ However, the court refused appellant's instructions based upon section 7786 of title 17, article 2 of the Administrative Code[2] and instructed the jury the regulations concerning

---

[1] The instructions read: "Chapter 1., Division 20, Section 24101.2 of the California Health and Safety Code provides: 'Every person operating or maintaining a public swimming pool must do so in a sanitary, healthful and safe manner.' "

"Section 7788 of Title 17, California Administrative Code, Article 2, provides as follows: 'Depth of water shall be plainly marked at maximum and minimum points, points of break in slope between the deep and shallow portions and at intermediate increments of depth, spaced at not more than 25-foot intervals. Depth markers shall be in numerals of 4 inches minimum height and of a color contrasting with background. Markers shall be on both sides and ends of the pool at, or above, the water surface on the vertical pool wall and except for pools 20 feet or less in width, on the edge of the deck or walk next to the pool.' "

"Title 17, Article 2, Section 7809 of the California Administrative Code provides in part as follows: 'Artificial lighting shall be provided for all public bathing places that do not have adequate natural lighting. Pools designed and maintained for use at night shall be equipped with underwater lighting that will light all areas of the bottom of the pool as well as the entire volume of the pool, with no blind spots unless it can be demonstrated that a particular system of overhead lighting will provide equivalent underwater illumination without creating reflections from the water surfaces, or other effects, that interfere with observations, particularly of underwater areas. All other parts of swimming pools which are indoors or are used at night shall also be well lighted.' "

[2] The refused instruction, phrased in terms of the regulation, read: "From the shallow end, the pool bottom shall be sloped at a rate not to exceed for pools more than 20 feet in width—one foot vertically in 12 feet horizontally, the above slope shall be extended to a depth of not less than five feet except that when rope and buoys are continuously maintained, the slope shall extend to a depth of not less than 4½ feet. Wherever there is a break in slope from shallow to deep water, devices for fastening safety ropes shall be installed at least two feet toward the shallow end from the break and safety rope and buoys shall be provided."

rate of slope and the requirement of a rope and buoys contained in the section and referred to during the trial were determined, as a matter of law, to be inapplicable to the case and were to be disregarded. Appellant contends this was error.

The provisions of section 7786, at least as applied to a pool designed as the one under consideration, are not unambiguous. At the trial, one engineer testified if the pool had been one inch deeper, no rope at all would have been required; another stated three different ropes were necessary. A third believed no rope was required under the circumstances by the provisions of the section. The trial court, however, did not base its refusal to instruct on the section on the ground the section was not applicable to this particular pool.

California Evidence Code section 669 was adopted in 1967, was in effect when this case was tried, and codified existing California case law. (See Law Revision Com. comment to Evid. Code, § 669; *Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897].) It provides in part:

"(a) The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

If it is assumed respondents' pool was in violation of the Administrative Code section requiring a rope and buoys in public swimming pools under certain circumstances, Mrs. Atkins could not recover damages for violation of the section unless (1) she was one of the class of persons for whose benefit the regulation was adopted, (2) the accident was of the kind or nature which the regulation was designed to prevent or protect against, and (3) the violation was a proximate cause of her injuries. (*Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 497 [225 P.2d 497]; Cal. Evid. Code, § 669, *supra.*)

The regulation was adopted for the benefit and protection of those who use public swimming pools, and appellant as a guest using the pool, was one of the class of persons for whose protection and benefit the regulation was enacted.

Had the rope and buoys been in place as required by the regulation, appellant argues she would not have dived into the pool at the place she did.

She contends the trial court, by failing to instruct on the regulation, improperly removed from the jury the issue of whether the violation of the regulation was a proximate cause of her injury. To be entitled to the presumption of negligence arising from violation of the regulation, it was not enough for appellant to prove respondents violated the duty imposed by it, and that she would not have been injured if the duty had been performed. She was required to go further and to establish her injury resulted from an occurrence of the nature, kind or type which the regulation was designed to prevent. (*Nunneley* v. *Edgar Hotel, supra,* 36 Cal.2d 493, 498; Evid. Code, § 669, *supra.*) The trial judge refused to instruct on the provisions of the regulation requiring a rope and buoys in swimming pools because he believed the regulation was not designed to prevent or guard against the type of accident appellant experienced. We agree.

The apparent purpose of the requirement contained in Administrative Code title 17, article 2, section 7786, concerning the placement of a rope and buoys in swimming pools is to warn nonswimmers or poor swimmers of approaching deeper water, to serve as a barrier between the shallower water and the deeper water and to afford support for swimmers who may find themselves in need of it. We believe, as did the trial court, the regulation was designed to prevent drowning accidents and not to protect against diving accidents. The instruction concerning the presumption of negligence arising from the violation of statute or safety regulation should only be given if the court determines, as a matter of law, the injury resulted from an occurrence of the nature which the statute or regulation was designed to prevent. (Evid. Code, § 669; *Nunneley* v. *Edgar Hotel, supra,* 36 Cal.2d 493, 499-500; *Asplund* v. *Driskell,* 225 Cal.App.2d 705, 709, 716 [37 Cal.Rptr. 652].) Having correctly concluded to the contrary, the trial court properly rejected the proposed instruction concerning the regulation providing for the use of a rope and buoys in swimming pools and advised the jury to disregard all reference to the regulation made during the trial.

 The trial court instructed the jury on the subject of violation of statute and safety regulation by reading the sections of the Health and Safety Code and the Administrative Code set out in footnote 1, and by giving the following instruction: "If you find that a party to this action violated any law or regulation just read to you and that such violation was a proximate cause of injury to the plaintiff, you will find that such violation was negligence [unless such party proves by a preponderance of the evidence that he did what might reasonably be expected ·of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law]." (BAJI No. 149 revised 1st paragraph; now first paragraph BAJI 3.45.)

Appellant contends it was error to give the bracketed portion of the instruction because respondents presented no evidence they did anything in an attempt to comply with the applicable statute or regulations. She submitted the following instruction, which the court rejected as covered: "If you find that a party to this action violated the sections of the California Health and Safety Code or the California Administrative Code just read to you, you will [find] that such violation was negligence."

The instruction given by the court on its own motion is a correct statement of the law. (Evid. Code, § 669, *supra; Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 624.) However, the portion of the instruction in brackets should not be given if there is no inference or proof sufficient to support a finding the person charged with violating the statute or regulation did what might be reasonably required of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. (*McCaughan* v. *Hansen Pacific Lumber Co.,* 176 Cal.App.2d 827, 833-834 [1 Cal.Rptr. 796].)

■■ Appellant contended respondents' pool violated several statutes and regulations, some of which contained multiple safety requirements. The assertion respondents presented no evidence of any attempt to comply with the statutes and safety regulations, and offered no evidence tending to establish justification and excuse for noncompliance with all of them, is overbroad. For example, they presented substantial evidence to support a finding, either directly or by inference, they did many things to maintain their pool in a "sanitary, healthful and safe manner," as required by Health and Safety Code section 24101.2. They also presented substantial evidence they complied with, or did what would reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the lighting requirements contained in Administrative Code section 7809.

It is true, as appellant contends, respondents offered no evidence of an attempt to comply, or of justification or excuse for noncompliance, with the code provisions requiring depth markers on the deck around the edge of the pool. It is also true respondents' evidence of justification and excuse for noncompliance with the provision requiring the depth markers on the sides of the pool to be above water level was scarcely substantial. (If the water level was kept at the base of the numbers on the tiles of the pool, the filtration system did not function properly.) If appellant desired an instruction which would have eliminated the application of the bracketed portion as to the specific violations concerning which respondents offered no evidence of justification or excuse, it was her duty to present such an instruction. Where an instruction is correct as far as it goes, but fails to

state proper qualifications or limits, a more specific instruction should be requested. (*Mula* v. *Meyer,* 132 Cal.App.2d 279, 286 [282 P.2d 107]; *Merrill* v. *Buck,* 58 Cal.2d 552, 563 [25 Cal.Rptr. 456, 375 P.2d 304].) Appellant's duty to present a proper instruction, eliminating the application of the bracketed portion of the instruction as to those violations concerning which respondents had offered no substantial evidence of justification and excuse for noncompliance, was not met by submitting a general instruction which improperly removed the issue of justification and excuse as to all claimed violations. If the instruction was too broad, appellant is precluded from raising the issue on appeal by her failure to offer a proper limiting instruction.

In any event, the instruction given is self-limiting. By its terms, the jury was told a violation of statute or regulation was negligence, *unless the party charged with the violation proved by a preponderance of the evidence* he did what might be reasonably expected of a person of ordinary prudence, under similar circumstances, who desired to comply with the law. Where, as here, there was evidence, and inferences to be drawn therefrom, which would support a finding of justification and excuse as to some violations, but not as to others, it must be assumed the jury understood and followed the instruction, and gave effect to the bracketed portion relating to justification and excuse only in those instances where the proof warranted its application. (*Roberts* v. *Del Monte Properties Co.,* 111 Cal.App.2d 69, 78 [243 P.2d 914].)

At appellant's request, the trial court gave BAJI instruction No. 138.2 (now slightly modified in BAJI 3.13) which read: "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to assume that he is not exposed to danger which can come to him only from a violation of law or duty by another person."

However, at respondents' request, it modified the instruction by adding: "One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care."

Appellant contends the added portion of the instruction was unwarranted and erroneous ". . . because it implies there was an obvious danger which existed at the time of plaintiff's injury. On the contrary, . . . the only danger was concealed." Neither the instruction nor the evidence is susceptible of this interpretation.

At the time appellant dove and was injured, she had been in and about

the pool for approximately one hour. Several witnesses testified it was obvious from observation the pool was a shallow pool. Appellant herself testified she had stood in the area where she dove and the water came only to her shoulders. She had not been in the area toward which she dove, but assumed it was deeper and thought it looked deeper. During the trial, the jury was taken to view the pool and was able to make its own observation. Whether the danger presented by the shallow pool was obvious or concealed was a question of fact, and its proper resolution was not dependent upon what appellant herself perceived, but upon what would have been perceived by a person of ordinary prudence, under the same or similar circumstances. We think the instruction leaves the resolution of this basic issue to the jury, and do not find in the words "one is not justified in ignoring obvious danger," any implication such a danger in fact existed.

In early editions of BAJI, the portion of the instruction which the court added was carried in brackets at the end of the instruction on the "Right to Assume Others' Good Conduct" (see BAJI Instruction No. 138 (3d rev. ed.) p. 166), and, if the facts warranted, it was error not to give that part of the instruction. (*Koenig* v. *Coe,* 163 Cal.App.2d 429, 431-434 [329 P.2d 721].) Since then the body of the instruction has been modified and contains the qualifying clause, "and in the absence of reasonable cause for thinking otherwise." While it is now repetitious and redundant to give the added portion of the instruction, the error in doing so is not of the prejudicial quality which warrants a reversal of the judgment. (Code Civ. Proc., § 475.) Certainly we cannot say it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

█ During the trial, appellant sought to introduce Orange County Health Department records of pool inspections, including one which indicated the pool water was cloudy on June 27, 1967, one month after the accident. She offered these to show (1) the probable condition of the water at the time of the accident, and (2) to impeach respondents' manager who testified the pool was always clean. The trial court refused to receive the records in evidence.

The relevant question was the condition of the water at the time of the accident. While evidence of a condition before and after an accident is sometimes admissible to show probable condition at the time of the accident (*Slovick* v. *James I. Barnes Constr. Co.,* 142 Cal.App.2d 618, 624-625 [298 P.2d 923]), the question of whether such evidence should be admitted is directed to the trial court's sound discretion, which will not be disturbed on appeal unless there is a clear showing of abuse (*Larson* v. *Solbakken,* 221 Cal.App.2d 410, 420-421 [34 Cal.Rptr. 450]). The trial

court rejected the proffered evidence as too remote and speculative and particularly pointed out the fact there were at least 15 witnesses who actually saw the water on the night of the accident and who could have been questioned as to the condition of the water on that night. The only witness appellant's counsel questioned on the subject was respondents' manager, of whom he asked: "Q: Now, did you notice whether or not the pool itself was cleaner than it usually is? A: No, it was always clean." Under the circumstances we cannot say the trial court's rejection of evidence the water in the pool was cloudy 30 days after the accident was an abuse of discretion.

■ The trial court rejected appellant's proposed instruction on nuisance which was couched in the terms of Health and Safety Code section 24106, and read: "Any public swimming pool constructed, operated or maintained contrary to the provisions of this article is a public nuisance, dangerous to health."

Appellant neither pleaded nor presented her case on the theory of nuisance, and this is the only instruction she submitted on the subject. Assuming she could establish a case for recovery for her injuries on the theory of nuisance, and further assuming she was not required to specially plead such a cause of action in order to do so (questions we need not decide here), the single instruction which she offered on the subject would still remain completely meaningless. If, as appellant contends in her brief, she had a right to recover on the theory of nuisance, she had a corresponding duty to submit complete and meaningful instructions to support it. (*Alvarez* v. *Felker Mfg. Co.*, 230 Cal.App.2d 987, 1001 [41 Cal.Rptr. 514].) The instruction submitted falls far short of that requirement and was properly rejected.

■ ■ In his summation to the jury, respondents' counsel (1) started to argue there was no evidence of prior accidents, and (2) did argue consideration should be given to the fact respondents had purchased a going apartment complex and a completed swimming pool in determining whether or not respondents were negligent. Appellant contends this was prejudicial misconduct.

Both arguments were improper. However, as to the first point, respondents' counsel was interrupted in mid-sentence by a proper objection, and the court told the jury: "Ladies and gentlemen, there was touched upon or started to be touched upon this question of the absence of prior accidents at the—at this particular swimming pool. Now, that is not a proper subject of argument or evidence and the Court will give you an

instruction later on when I crystalize the problem involved a little bit further and I will try to incorporate it into my instructions at a later time. At this time I won't say anything more about it."

Respondents' counsel made no further reference to the matter in his argument and in his formal charge to the jury the trial judge gave the following instruction: "The absence of prior accidents at the swimming pool involved in this case, if such was the fact, is not a subject upon which evidence was received in the course of the trial. You should not speculate whether there were or were not such prior accidents and should determine the issues exactly as though this subject had not been touched upon."

We are convinced the prompt action taken by the trial court was sufficient to remove any prejudicial effect from the abortive attempt to argue improperly on the subject of lack of prior accidents. "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have." (*Tingley* v. *Times-Mirror,* 151 Cal. 1, 23 [89 P. 1097]; see also *Horn* v. *Atchison, T. & S. F. Ry. Co.,* 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561]; *Drotleff* v. *Renshaw,* 34 Cal.2d 176, 180-181 [208 P.2d 969].) The remarks were not so prejudicial the usual rule should not prevail.

As to the second claim of improper argument, inferring respondents' duty was different because they had purchased a completed swimming pool, no objection was made to it, nor was the court ever requested to admonish the jury to disregard it. The right to object on appeal to misconduct or improper argument, even when prejudicial, is generally waived in the absence of a proper objection and request the jury be admonished. (*Horn* v. *Atchison, T. & S. F. Ry. Co.,* 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].) Here, the improper argument was oblique and was not repeated or reemphasized. It was not of such a character it could not have been obviated by proper objection and instruction. In any event, we doubt the jury was misled by it. In its charge to the jury, the trial court specifically stated: "Every person *operating* or *maintaining* a public swimming pool must do so in a sanitary, healthful and safe manner." (Italics added.) (Health & Saf. Code, § 24101.2.)

This case was thoroughly tried and well presented. If errors occurred in connection with the matters we have discussed, we are convinced from the whole record such errors, whether viewed singly or in combination, were

not of the substantial prejudicial variety which would permit reversal of the judgment.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1971. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.