[Civ. No. 2112. Fifth Dist. May 23, 1975.]

JAMES S. LEVELS, Plaintiff and Respondent, v.
GROWERS AMMONIA SUPPLY COMPANY et al.,
Defendants and Respondents;
CONTINENTAL CASUALTY COMPANY, Intervener and Appellant.

**COUNSEL**

Sandell, Hill, Young & St. Louis and Floyd S. Hill for Intervener and Appellant.

Sims & Solomon, King, Eyherabide, Anspach & Newell and Gabriel Solomon for Plaintiff and Respondent and for Defendants and Respondents.

**OPINION**

**FRANSON, J.—**

### STATEMENT OF THE CASE AND FACTS

On November 16, 1969, James Levels sustained serious bodily injuries while performing duties for his employer, Fredlo Farms, a farming

partnership composed of Fred Frick and his son, Jim Frick. The accident occurred while Levels was disconnecting a liquid hose from a large anhydrous ammonia storage tank. Respondent, Growers Ammonia Supply Company, hereafter "Growers," a wholly owned corporate subsidiary of respondent Occidental Chemical Company, had supplied large ammonia-filled tanks, hoses and other equipment to Fredlo for use by Fredlo employees in fertilizing a wheat field. Levels had had no prior experience in the use of such equipment, and his employer was aware of his lack of such experience. Fredlo was also aware that the anhydrous ammonia was highly volatile and pressurized to 400 pounds per square inch, and that an explosion could result from disconnecting a wrong hose. Nevertheless, Fredlo ordered Levels to attempt to use and operate the equipment pursuant to directions given by one Gallegos, an employee of Growers. Fredlo had never before used the services of Growers and it had no knowledge as to the competency of Gallegos to instruct relative to safe and proper usage of the dangerous and complex equipment. While Gallegos instructed Levels on how the equipment should be operated, Jim Frick stood by out of earshot about 50-100 feet away talking to some other men. In the process of giving instructions, Gallegos hooked hoses to incorrect valves which resulted in a compressor freezing up and becoming inoperative. Gallegos left the field for about one-half hour and returned with a new compressor. Jim Frick witnessed this incident and became concerned as to whether or not Gallegos was competent to instruct Levels in the operation and use of the equipment; however, when Gallegos returned with the new compressor, Frick did not move closer so he could hear the instruction.

Gallegos orally instructed Levels through one complete cycle of filling the saddle-tanks on the tractor from the larger nurse-tank of $NH_3$, but he provided no written instructions to Levels. Several other nurse-tanks were spotted around the field. Gallegos told Levels to hook the hoses and valves to the other nurse-tanks exactly like he had demonstrated on the first tank. As Gallegos was leaving the field, he noticed that there was some difference between the second nurse-tank and the first one, but he did not return and notify anyone of this fact. The accident occurred when Levels attempted to fill the tractor saddle-tanks from the second nurse-tank in the same manner as he had from the first nurse-tank. In doing so, Levels mistakenly removed a hose that was still under pressure causing an explosion.

Although Fredlo Farms was a large-scale farming enterprise with some 2,500 acres of land and employed as many as 120 full-time employees, it had no safety program for its employees and made no

effort to acquaint itself with applicable state safety regulations. At the time of Levels' injury, Jim Frick was unaware of and had made no effort to acquaint himself with various applicable safety orders including one pertaining to the transfer of anhydrous ammonia. That safety order requires that during transfer at least one attendant familiar with the installation must remain in attendance, and the attendant can only be considered familiar with the equipment after he has been provided with a set of operating instructions and has been instructed through a minimum of three full cycles of operation. For portable loading facilities like those used in this case, the safety order also requires that written instructions be posted or be supplied to the personnel. (Cal. Admin. Code, tit. 8, § 509.) There is no question that the safety order was not complied with.

On May 15, 1972, Levels filed a first amended complaint against Growers and Occidental Chemical Company, stating causes of action for negligence, statutory employer negligence, ultra-hazardous strict liability, and defective product liability. Respondents answered denying the allegations of negligence and alleging as affirmative defenses contributory negligence, assumption of the risk and the *Witt* v. *Jackson* defense of the concurrent negligence of Levels' employer, Fredlo Farms. (*Witt* v. *Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641].)

Thereafter, appellant Continental Casualty Company, Fredlo Farms' workmen's compensation insurer, filed an amended complaint in intervention seeking to recover from Growers over $16,000 paid out in compensation benefits to Levels. Continental pleaded causes of action in negligence and in strict liability for supplying a defective product and prayed for indemnity from Growers for all sums paid and to be paid to Levels by way of compensation benefits. Growers answered denying negligence and strict liability on its part and alleging as affirmative defenses negligence, assumption of risk and recklessness on the part of Fredlo Farms, both independently through the conduct of Jim Frick, a partner, and by imputation through the conduct of its employee, Levels.

On April 20, 1972, counsel for Levels mailed to counsel for Growers a letter proposing a stipulated judgment in favor of Levels. A copy of the letter was received by counsel for Continental Casualty. Continental made no objection to the proposed stipulated judgment.

On May 1, 1972, stipulated findings, conclusions and judgment, signed by counsel for Levels and Growers, were filed. The stipulated findings and judgment recited that Levels' injuries arose out of the course of

employment by Fredlo Farms and were proximately caused by the negligence of Growers; that Levels was not contributorily negligent and did not voluntarily assume the risk; that Continental Casualty was entitled to recover its lien for compensation benefits paid to Levels unless the lien recovery was barred by reason of Fredlo Farms' concurrent negligence, wilful misconduct, or other misconduct under the *Witt* v. *Jackson* (57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]) doctrine.[1] Levels was awarded $60,000. An attached trust agreement signed by counsel for Levels and Growers provided that $43,000 of the $60,000 was to be paid directly to Levels, while the remaining $17,000 was to be held in trust; in the event Continental prevailed in asserting its lien, the judgment would be paid out of the $17,000; however, in the event that Continental was found to be barred from recovering its lien for workmen's compensation benefits, the entire $17,000 was to be paid to Levels.

On May 1, 1972, the intervention action came to trial. Counsel appeared on behalf of all parties. Counsel for Continental stipulated that Growers, by means of the stipulated settlement and trust agreement, had satisfied all liability to Continental; thereupon, counsel for Growers withdrew from the courtroom and the one-day trial proceeded between Levels and Continental.

On November 9, 1972, the court filed a notice of intended decision stating that Continental was barred from recovering its lien. Findings of fact and conclusions of law were filed which stated in effect that Fredlo Farms was as culpable as Growers in failing to see that Levels was properly instructed in the use of the $NH_3$ equipment and in failing to comply with the state safety regulations regarding the transfer of anhydrous ammonia. A judgment was entered ordering that Continental was not entitled to recover any compensation benefits paid by it to Levels, and that Growers was authorized to pay Levels the $17,000 held in trust.

### DISCUSSION

■ As we understand appellant Continental's brief, it makes three essential contentions: first, because Growers and Levels settled their

[1]On May 9, 1972, counsel for Levels and Growers filed an amendment to the stipulated findings, conclusions and judgment deleting the portion which stated that Continental would be entitled to recover its lien unless barred by reason of wilful misconduct and/or other misconduct; the proviso was added, however, that the amendment was without any intent to preclude any defense assertable against the plaintiff in intervention (Continental).

lawsuit without Continental's approval, the trial court had no jurisdiction to litigate the question of the employer's concurrent negligence in causing Levels' injury. Second, assuming that the court had the right to determine this question, nonetheless the *Witt* v. *Jackson* defenses available to Growers as the third party tortfeasor were not available to Levels so as to defeat Continental's claim for reimbursement of compensation benefits. Stated otherwise, Continental contends that the *Witt* v. *Jackson* defense is personal to the third party tortfeasor and may not be used by the employee to defeat his employer's right to reimbursement. Third, Continental contends that the evidence shows that Growers' fault was based on strict liability in tort resulting from the furnishing of a dangerous and defective substance and that the employer's negligence does not bar it or its carrier from recovering the compensation benefits, citing *Ruiz* v. *Minnesota Mining & Mfg. Co.,* 15 Cal.App.3d 462 at page 470 [93 Cal.Rptr. 270] and *Lewis* v. *American Hoist & Derrick Co.,* 20 Cal.App.3d 570 at page 585 [97 Cal.Rptr. 798].

The statutory scheme for reimbursing the employer for compensation benefits paid to an injured employee is as follows: the Labor Code subrogates the employer to the injured employee's tort recovery against a negligent third party, thus permitting the employer to recover its payments either through an independent lawsuit against the third party (Lab. Code, § 3852), or by intervening in the employee's suit against the third party (Lab. Code, § 3853), or by claiming a lien on any judgment recovered by the employee' against the third party (Lab. Code, § 3856, subd.(b)).

When Continental intervened in Levels' suit against Growers, it subjected itself to the jurisdiction of the superior court to determine its insured's relative fault in connection with Levels' injury, so as to determine its right to reimbursement of benefits. (Lab. Code, § 3853; *Witt* v. *Jackson, supra,* 57 Cal.2d 57.) Unlike the situation where the employee is claiming compensation benefits from his employer and *exclusive* jurisdiction is vested in the appeals board (Lab. Code, §§ 3601, 5300), where the employer is seeking indemnification from a third party for benefits paid to the employee, the board and the superior court have concurrent jurisdiction over the question of the employer's fault. (See *Roe* v. *Workmen's Comp. Appeals Bd.,* 12 Cal.3d 884, 887 [117 Cal.Rptr. 683, 528 P.2d 771].)

In *Witt* v. *Jackson, supra,* 57 Cal.2d 57, a substantive condition is attached to the employer's recovery of benefits; he may not recover from the third party if his own negligence contributed to the accident. It also

reduced the employee's recovery of third party damages by giving the third party a credit for the amount of compensation benefits received by the employee.

Appellant's argument that the concurrent negligence defense of *Witt* v. *Jackson* can be asserted only by the third party tortfeasor and not by the injured employee, and its argument that the effect of the trial court's judgment is to allow the employee a double recovery contrary to the purpose of the workmen's compensation scheme (see *Witt* v. *Jackson, supra,* 57 Cal.2d at p. 73) have been answered in the recent cases of *Roe* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d 884 [117 Cal.Rptr. 683, 528 P.2d 771], and *Gregory* v. *Workmen's Comp. Appeals Bd.,* 12 Cal.3d 899 [117 Cal.Rptr. 694, 528 P.2d 782]. In these cases, the Supreme Court held that where an employer seeks to credit against his liability to pay permanent disability benefits the net amount of a settlement received by the employee from a third party tortfeasor (see Lab. Code, § 3858), the employee may raise the *Witt* v. *Jackson* defense to defeat the employer's claim. The court reasoned that the *Witt* v. *Jackson* indemnification cycle is designed to provide an allocation of monetary responsibility according to the respective party's own wrongdoing; denial of the concurrently negligent employer's recovery from the third party is premised on the law's policy of preventing the employer from taking advantage of his own wrong. On the other hand, the rule allowing the third party credit against its own tort liability for workmen's compensation benefits previously paid is grounded on the policy of denying the employee a double recovery. As stated in *Roe* (quoting from Justice Friedman's Court of Appeal opinion): "When the employer/carrier then goes before the [court] protesting the employee's double recovery, one asks: 'What's Hecuba to him or he to Hecuba, that he should weep for her?' If the employer's negligence contributed to the accident, the double recovery was gained not from him but from the third party, who did not claim a deduction for employer negligence. If the employer was free of negligence, he gained (but did not assert) a subrogated right to recover his compensation payment as damages. It is doubtful, in any event, whether a double recovery is created by a settlement which does not cover the totality of claims, including those of the employer. [Citations.]" (12 Cal.3d at p. 889.)

Where, as here, a choice must be made between preventing the employer from benefiting from his own wrong and preventing the employee from reaping a double recovery, the decision must be made in favor of the employee and against the employer. This is so because the rule against double recovery was designed primarily to protect the third

party tortfeasor and not the employer. (See *Roe* v. *Workmen's Comp. Appeals Bd., supra; Gregory* v. *Workmen's Comp. Appeals Bd., supra.*) Here, the third party (Growers) chose to settle with the injured employee without asserting its defense of the employer's concurrent negligence. Under the rationale of *Roe* and *Gregory* we see no reason why the employee cannot thereafter assert the defense against the employer and its carrier so as to preserve the public policy of preventing the employer from financially benefiting from his own wrongdoing. The trial judge was correct in allowing Levels to raise the *Witt* v. *Jackson* issue.

 Appellant's remaining contention is that the trial court's finding that Growers failed to provide adequate instruction to Levels in operating the equipment established Growers' responsibility as one of strict liability in tort for supplying a defective product, thus rendering the *Witt* v. *Jackson* defense inapplicable. In *Ruiz* v. *Minnesota Mining & Mfg. Co., supra* (15 Cal.App.3d 462, 469-471), it was held that *Witt* v. *Jackson* was inapplicable because, although it was assumed that the employer was negligent in not providing adequate ventilation or protective respiratory equipment to employees working with a special adhesive containing toluene, the third party manufacturer had been held strictly liable for marketing the glue which proved to be toxic. The reviewing court found that because the employer was a consumer of the defective product and was not aware of its toxic nature, its negligence was not on a par with the fault of the manufacturer; hence, it should not be barred from recovering from the manufacturer the compensation benefits paid to its employees.[2]

We believe, however, that the present case is distinguishable on its facts from *Ruiz*. The factual basis of Growers' liability was not any physical defect in the chemical or equipment it supplied to Fredlo Farms; liability instead was grounded on the inadequate instructions given to Levels by the Growers' employee, Gallegos. The failure of Gallegos to adequately instruct Levels in the operation of *all* of the equipment proximately caused Levels' injuries. The inadequacy of the instruction was a violation of the state safety order. (Cal. Admin. Code, tit. 8, § 509.)

The fault of the employer Fredlo was identical to the fault of Growers. Employers are under a nondelegable duty to provide

[2]*Ruiz* was followed in *Lewis* v. *American Hoist & Derrick Co., supra,* 20 Cal.App.3d 570, 584-585, and in *Shamblin* v. *Polich,* 32 Cal.App.3d 756, 762-763 [97 Cal.Rptr. 798], the *Ruiz* rationale was relied upon to permit a possibly negligent employer to recover its workmen's compensation lien from a third party tortfeasor guilty of wilful and wanton misconduct.

employees with a safe place to work and to comply with the applicable safety laws of the Labor Code. (*Maloney* v. *Rath,* 69 Cal.2d 442, 447 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1]; *Alber* v. *Owens,* 66 Cal.2d 790, 792-795 [59 Cal.Rptr. 117, 427 P.2d 781]; *Conner* v. *Utah Constr. & Mining Co.,* 231 Cal.App.2d 263, 276-277 [41 Cal.Rptr. 728].) Where an independent contractor is hired to do work which the employer recognizes as creating an unreasonable or peculiar risk of harm unless special precautions are taken, liability will be imposed upon the employer if he fails to assure that the precautions are taken. (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 249-255 [66 Cal.Rptr. 20, 437 P.2d 508]; *Courtell* v. *McEachen,* 51 Cal.2d 448, 456-457 [334 P.2d 870].) As with Growers, Fredlo's breach of a state safety regulation is negligence per se. (Evid. Code, § 669; *Alber* v. *Owens, supra;* see Lab. Code, §§ 6400-6403, 6407-6408.)

 Fredlo's representative, Jim Frick, testified that he knew that Levels was unfamiliar with the $NH_3$ transfer procedure and equipment; that he did not know Gallegos and knew nothing of his competency to instruct in the use of the equipment; that he was aware of the volatile and dangerous nature of anhydrous ammonia; that he observed the incident when Gallegos hooked a hose to the wrong valve and froze up the compressor; that he became "concerned" about Gallegos' competence; that he did not thereafter walk close enough to listen to the instruction session; that he himself provided Levels with no written or oral instructions; that he was unaware of the applicable safety order and had made no effort to become aware of it; and that there was no organized safety program in existence at Fredlo. Because Fredlo Farms was under a nondelegable duty to see that Levels received adequate instruction in the use of the equipment and to see that the state safety regulation was complied with, yet failed to do so, and because Jim Frick was put on notice of the incompetence of Gallegos, the fault or culpability of Fredlo Farms was identical to the fault or culpability of Growers. This is not a case where the strict liability of the third party was based on a no-fault principle while the employer was merely negligent; thus, the *Ruiz* rationale that the employer and third party were not joint tortfeasors is inapplicable. What counts is what the parties did, not what label may be affixed to their actions. Considering that the breach of duty by Fredlo Farms and by Growers was nearly identical, the *Witt* v. *Jackson* policy of preventing a culpable employer from profiting from his own wrong should govern.

An alternative rationale for implementing the *Witt* v. *Jackson* policy of not permitting the employer to benefit from his own wrong is to

assume that Growers' liability was based on strict product liability and hold that Fredlo Farms assumed the risk of the defective product. ■ While ordinary contributory negligence is not a defense to strict product liability, assumption of the risk is; i.e., voluntarily and unreasonably proceeding to encounter a known danger. (*Luque* v. *McLean,* 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163].)

■ On the facts, Jim Frick was aware of Levels' inexperience with $NH_3$, he was aware of the danger involved, and he became aware of Gallegos' incompetence as an instructor, yet he did nothing to assure adequate instruction and allowed Levels to operate the equipment without further supervision. The evidence supports a finding that Fredlo assumed the risk of the conditions that gave rise to Growers' strict liability, causing Fredlo to become a joint tortfeasor within the meaning of *Witt* v. *Jackson.*

The judgment is affirmed.

Gargano, Acting P. J., and Thompson, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.