[Civ. No. 14224. Fourth Dist., Div. One. Mar. 22, 1976.]

LARRY K. VALLAS, Plaintiff and Appellant, v.
CITY OF CHULA VISTA et al., Defendants and Respondents.

## COUNSEL

Brierton & Tierman and Bill J. Brierton, Jr., for Plaintiff and Appellant.

Holt, Rhoades & Hollywood and Douglas R. Reynolds for Defendants and Respondents.

## OPINION

**COLOGNE, J.**—On December 10, 1971, Larry K. Vallas filed a complaint for personal injuries and damages against Lon Napier, a Chula Vista police officer, and the City of Chula Vista. The complaint was later amended and he went to trial on causes of action based on negligence in handling of a gun by Napier and negligence in the training or instructing of Officer Napier by the city. The defenses offered by

Napier and the city included contributory negligence and assumption of risk. A jury verdict was returned in favor of the defendants and Vallas appeals.

Vallas borrowed $750 from Willie Wansa and evidenced his promise to repay the amount of the loan by executing postdated checks in the amount of the agreed installment. Vallas suffered financial reverses and was unable to cover the checks when presented for payment. Wansa made additional demands and Vallas was anxious to tell Wansa the checks would be paid off in several weeks.

Vallas tried to telephone Wansa at the Torrey Pines Golf Course and was told Wansa had gone to the San Diego Country Club in Chula Vista to watch a women's golf tournament. Vallas drove there, parked his car and set off to search for Wansa whom he later found.

Wansa had filed a criminal complaint against Vallas for the issuance of bad checks and Vallas knew the complaint had been filed but was not aware of the fact that a warrant for his arrest had been issued.

During the conversation Wansa excused himself, ostensibly to get his camera, and called the San Diego Police Department informing them that Vallas was there. Officer Dennis Love of that office called the Chula Vista Police Department, since it was located closer to the country club, and asked for assistance. Detective Ross Withers III and Officer Lon Napier were dispatched to the country club with a telephonic request to make the arrest pursuant to three warrants which were believed to exist. They were given a physical description of Vallas and advised that Mr. Wansa would be there to identify him.

Withers and Napier, who were dressed in civilian clothes, encountered Vallas at the country club and identified themselves. Vallas refused to identify himself but Wansa verified the identity. The officers told Vallas that if he was Vallas, he was under arrest and they were waiting for the San Diego police unit to arrive with the warrant and photographs.

At the suggestion of Vallas the group moved from the position of public view. The officers frisked Vallas for weapons and determined he had none. He was then told to get into the unmarked police car. He entered the front passenger side, slid quickly across the front seat, opened the driver's door, jumped out of the car and ran. Officer Napier ran after him initially some 90 feet behind. Napier drew his service

revolver and fired a warning shot when it appeared Vallas was about to enter a parked vehicle. Vallas turned but continued running. When it appeared Vallas was about to enter a house, Napier yelled "halt" and fired a second warning shot but again Vallas turned abruptly and continued running. Napier testified he believed Vallas was guilty of a more serious crime than "checks" to risk death rather than be caught. A third shot was fired by Napier intending to hit Vallas in the leg but actually hitting him in the intestinal area. Vallas fell and was captured. An ambulance was called. The San Diego police arrived shortly after the capture, advised Vallas of the warrant and placed him under arrest.

At the trial the following provisions of the Chula Vista Police Manual were received into evidence:

"307.00 Firearms Regulations.

"307.01. Firearms—Display of by Officers: Officers shall not unnecessarily display any firearm in any public place, or carelessly handle a firearm at any time.

"307.02. Firearms—Discharge of: Officers shall not discharge firearms in the performance of police duties, except under the following circumstances and after other reasonable means have failed:

"1. In defense of their own life.

"2. In the defense of another person's life.

"3. To effect the capture of or prevent the escape or rescue of a felony suspect in those cases where the crime involved the use of deadly force or threat of violence or deadly force with the present ability to commit same, and there is substantial risk that the suspect will cause serious bodily harm or death if he is not apprehended.

"4. Killing animals seriously injured or dangerous, when other disposition is impractical.

"5. To give an alarm or to call assistance for an important purpose, when no other means can be used.

"6. At an approved range.

"Deadly force should never be used on mere suspicion that a crime, no matter how serious, was committed, or that the person being pursued committed the crime. An officer should either have witnessed the crime or have sufficient information to reasonably believe that the suspect committed an offense for which the use of deadly force is permissible. The taking of a human life should only be resorted to when in not doing so other lives would be threatened.

"307.03. Warning Shots: Officers will not fire warning shots."

With respect to this evidence the trial court instructed the jury as follows:

"Failure to exercise the care that would be exercised by a reasonably prudent man possessing similar knowledge, training and experience under similar circumstances is negligence.

"Certain regulations of the Chula Vista Police Department concerning the use of firearms have been received in evidence. These regulations may be considered by you on the issue of negligence in this case. The regulations are not conclusive on this issue and are to be considered in the light of all the evidence. Give them the weight, if any, to which you deem them entitled."

■ Vallas complains that the trial court erred in refusing to instruct the jury in the language of Evidence Code section 669 which reads as follows:

"669. (a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation *of a public entity*; [Italics added.]

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

"(b) This presumption may be rebutted by proof that:

"(1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or . . . ."

Vallas admits the court properly instructed the jury if the police manual is construed as an employer's "safety rule" but asserts it is a "regulation" giving rise to a presumption affecting the burden of proof. We would add the regulation must be one "*of a public entity.*"

Violation of the Labor Code provision or a safety order contained in the California Administrative Code[1] or a provision of the Public Utilities Code[2] or of a general order of the Public Utilities Commission contained in the Administrative Code[3] or the Vehicle Code[4] are clearly within the presumption accorded in section 669. Similarly, the ordinances of a city are within the purview of the act.[5] Here, however, the manual comes not from the city but from a department of the city. We are provided no authority for the position that the police department is a "public entity" within the meaning of the section. Evidence Code section 200 defines a public entity as "a nation, state, county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation, whether foreign or domestic." While "public agency" may be a somewhat vague term, its use as a part of a definition of "public entity" must contemplate a body with some degree of sovereignty. Each of the listed entities as well as the classification found in the concluding language, "or any other political subdivision or public corporation," describes an independent body politic with sovereignty and not a department or office within the entity. To construe "public agency" any other way would be to destroy the concept of "entity." We note, too, the Law Revision Commission comment to section 811.2 of the Government Code, which defines "public entity" in a similar fashion, states the definition "is intended to include every kind of political or governmental entity in the state." None of the definitions of "public

---

[1] *Solgaard* v. *Guy F. Atkinson Co.*, 6 Cal.3d 361, 366 [99 Cal.Rptr. 29, 491 P.2d 821]; the presumption arising from violation of a Labor Code provision or safety order founded on Labor Code, division 5, section 6300 et seq. is not applicable except as between an employee and his own employer (Lab. Code, § 6304.5).

[2] *Ayer* v. *Boyle*, 37 Cal.App.3d 822, 828 [112 Cal.Rptr. 636].

[3] *Nevis* v. *Pacific Gas & Electric Co.*, 43 Cal.2d 626, 629-630, 633 [275 P.2d 761].

[4] *Alarid* v. *Vanier*, 50 Cal.2d 617, 621 [327 P.2d 897].

[5] *Olsen* v. *McGillicuddy*, 15 Cal.App.3d 897, 902-903 [93 Cal.Rptr. 530].

agency" we have been able to find would include a department of a city as such.[6] We must conclude the police department is merely an integral part of a public entity and not an entity itself.

Vallas relies on *Dillenbeck* v. *City of Los Angeles,* 69 Cal.2d 472 [72 Cal.Rptr. 321, 446 P.2d 129] and *Grudt* v. *City of Los Angeles,* 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825]. The *Dillenbeck* case involved the Los Angeles Police Department "Daily Training Bulletins" and the *Grudt* case involved the Los Angeles Police Manual. In each case the court only required the admission of the bulletins and manual into evidence on the issue of due care, but in neither case was the presumption imposed. While it may well be section 669 was not available for use at the time of trial of those cases, the section only codified the common law doctrine of "negligence as a matter of law" or "negligence per se" which was in effect and hence available (see Law Revision Com. comment following Evid. Code, § 669; *Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 621). His reliance on these authorities is not helpful. No effort was made to extend the doctrine to these departmental directives in those cases and we believe the presumption should not be extended to include a mere directive or recommended procedure promulgated by a municipal department head who has none of the attributes of a public entity. Whether the manual is technically a "safety order" or a "regulation" thus becomes a matter of no moment.

Since we have concluded the failure to adhere to the Chula Vista Police Manual procedure was not a violation of a "statute, ordinance or regulation of a public entity," it is unnecessary for us to consider Vallas' final argument it was error to instruct on assumption of risk where the negligence is based on such a violation. Assumption of risk was a valid defense and the jury was properly instructed.

Judgment affirmed.

Brown (Gerald), P. J., and Whelan, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1976. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[6] See Government Code sections 1151, 4401, 6500, 20009 and 53050. See also 1 McQuillin, Municipal Corporations, section 2.30, page 176, stating a department is not an entity even though a distinct city department is created by charter.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.