[L.A. No. 30867. May 16, 1979.]

OTIS PETERSON et al., Plaintiffs and Appellants, v.
CITY OF LONG BEACH et al., Defendants and Respondents.

**COUNSEL**

David R. Finch and Finch, Castello & Tennant for Plaintiffs and Appellants.

Amitai Schwartz, Margaret C. Crosby, Alan L. Schlosser, Fred Okrand, Nicholas B. Waranoff, Jacobs, Sills & Coblentz, Vilma S. Martinez, Morris J. Baller, John H. Erickson, Alice M. Beasley and Anthony G. Amsterdam as Amici Curiae on behalf of Plaintiffs and Appellants.

Leonard Putnam and Robert W. Parkin, City Attorneys, and Robert E. Shannon, Deputy City Attorney, for Defendants and Respondents.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Clifford K. Thompson, Jr., Deputy Attorneys General, Stephen Warren Solomon, William J. Ramey, Ralph B. Saltsman and Emanuel Cowitt as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

NEWMAN, J.—In 1972 Police Officer Vershaw shot and killed Roland Peterson. At the time of the killing Peterson was running from his apartment. Vershaw had responded to a radio call erroneously reporting a burglary in progress at the apartment. He approached with gun drawn. Peterson fled and was shot in the head. Vershaw had had no report of, nor did he see, any weapons, violence, or threat of violence at the apartment.

Plaintiffs, Peterson's parents, sued Vershaw and his employer, City of Long Beach, for wrongful death. The trial court, ruling that Vershaw's use of deadly force was justifiable, held in favor of both defendants. Plaintiffs appeal.

We conclude that the ruling on use of force was error. California law creates a presumption that Vershaw did not exercise due care here. The trial court should have considered, but did not consider, whether that presumption was rebutted by evidence that Vershaw did "what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ." (Evid. Code, § 669, subd. (b)(1).)

### I. *The Police Department Manual.*

■ Our first question is whether the Long Beach Police Department Manual contains regulations of a public entity. The question is pertinent to Vershaw's use of deadly force because in 1967 the Legislature enacted Evidence Code section 669, subdivision (a), which provides: "The failure

of a person to exercise due care is presumed if . . . [he] violated a . . . regulation of a public entity . . . ."[1]

The trial court found that "there was in existence Section 4242 of the City of Long Beach Police Department Manual which prescribed certain guidelines for the discharge of a firearm by a City of Long Beach police officer";[2] further, that "Officer Vershaw, in firing his weapon at Roland Peterson, failed to comply with the guidelines . . . ."[3]

---

[1]Section 669 reads:

"(a)  The failure of a person to exercise due care is presumed if:

"(1)  He violated a statute, ordinance, or regulation of a public entity;

"(2)  The violation proximately caused death or injury to person or property;

"(3)  The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4)  The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

"(b)  This presumption may be rebutted by proof that:

"(1)  The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ."

[2]See *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 368 [132 Cal.Rptr. 348]: "Section 161 of the Long Beach City Charter provides that '[t]he City police department shall be governed at all times by such rules and regulations as the City Manager may prescribe.' On or about June 1, 1972, defendant John R. Mansell, the City Manager of the City of Long Beach, and defendant William J. Mooney, Chief of Police of the City of Long Beach Police Department, duly prescribed section 4242 of the Long Beach Police Department Manual. The relevant portion of this section is taken from a model firearms policy proposed by Professor Samuel G. Chapman, who was assistant director of the President's Commission on Law Enforcement and the Administration of Justice (Task Force on Police)."

"The *Chapman* model has been made available in California through the cooperation of the California Commission on Peace Officer Standards and Training." (*Id.,* at p. 368, fn. 5.)

[3]In *Long Beach Police Officers Assn., supra,* footnote 2 the court concluded that section 4242 is "a reasonable regulation" and stated: "It is not in conflict with or preempted by state law. It does not deny constitutional rights to the officers." (61 Cal.App.3d at pp. 376-377.) The court set forth the pertinent part of the regulation as follows (*id.* at pp. 368-369):

"[I] 'The policy of the Department governing the display and discharge of firearms is that members shall exhaust every other reasonable means of apprehension before resorting to the use of a firearm.

"[IIA] 'An officer shall not discharge a firearm in the performance of his police duties except under the following circumstances and only after all other means fail:

"[1] 'In the necessary defense of himself from death or serious injury when attacked.

"[2] 'In the necessary defense from death or serious injury of another person attacked.

"[3] 'To effect an arrest, to prevent an escape, or to recapture an escapee when other means have failed, of an adult felony suspect when the officer has reasonable cause to believe that (a) the crime for which the arrest is sought involved conduct including the use

The court's conclusions of law included these paragraphs:

"5. The City of Long Beach Police Department Manual, Section 4242, though it may serve as a guideline for the conduct of Long Beach police officers, does not constitute a minimal standard of care for the use of firearms by said police officers.

"6. The failure of Officer Vershaw to comply with Section 4242 of the City of Long Beach Police Department Manual, in discharging his firearm herein, does not constitute a negligent or a wrongful act, so long as his conduct was within the permissible limit of the California Penal Code and it was within such limit. . . ."

Defendants argue that, when the Legislature in Evidence Code section 669, subdivision (a) enacted the phrase "statute, ordinance, or regulation of a public entity," the intent was to cover local ordinances but not local regulations like section 4242 of the police manual. Even though the chief of police and the city manager were authorized to act for the city and duly prescribed section 4242 (see fn. 2, *ante*), the argument seems to be that their official positions did not clothe them with the attributes of a public entity.

What did the Legislature mean by "public entity"? Section 200 of the Evidence Code, enacted two years earlier than section 669, tells us that a public entity can be "a nation, state, county, city and county, city, district, public authority, *public agency,* or any other political subdivision or

---

or threatened use of deadly force *and* [italics in original] (b) *there is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed.* [Italics ours.]

"[4] 'To kill a dangerous animal or one that is so badly injured that humanity requires its removal from further suffering and other disposition is impractical.

"[5] 'To give an alarm or to call assistance for an important purpose when no other means can be used.

"[6] 'For target practice at an approved range.

"[B] 'An officer shall not fire at persons known to be, or suspected of being, juveniles (persons under 18 years of age) except (a) in the necessary defense of himself from death or serious injury when attacked *or* [italics in original] (b) in the necessary defense from death or serious injury of another person attacked.

"[C] 'Firearms shall not be discharged under the following circumstances:

'As a warning.

'At moving or fleeing vehicles unless (a) in the necessary defense of himself from death or serious injury when attacked *or* [italics in original] (b) in the necessary defense from death or serious injury of another person attacked.' "

On pages 7 and 8 of his amicus brief filed to support defendants here the Attorney General conceded, "*Long Beach* held . . . that a chartered city could enact greater restrictions upon use of deadly force by police than those imposed by state law."

public corporation, whether foreign or domestic"; and when those definitional words were proposed the California Law Revision Commission commented: "The broad definition of 'public entity' includes *every form of public authority* . . . ." (Italics added.) Those two italicized phrases, "public agency" and "every form of public authority," are apt here.

A city is a public entity. But so are the office of its city manager and the department that its police chief directs. Each traditionally has been regarded as an "agency" of the city, obviously "public." We find it hard to believe that the Legislature would not regard city managers and police chiefs (whose power to promulgate rules is conceded) as heads of a "form of public authority." Since, therefore, when they promulgated the manual the city manager and the police chief were acting as heads of a public entity, as defined by the Legislature, and since section 4242 of the manual clearly is a "regulation,"[4] we hold that the trial court should not have concluded that section 4242 "does not constitute a minimal standard of care for the use of firearms by said police officers." The trial court thus did not give due consideration to the rebuttable presumption of failure to exercise due care that Evidence Code section 669 prescribes.

## II. *Policy Considerations*

So far we have focused on words and their plain meaning. We now examine legislative aims, to be sure that a conclusion as to words alone will not irrationally extend the Legislature's purpose.

The statute enacted in 1967 was proposed by the Law Revision Commission, which stated: "Section 669 codifies a common law presumption that is frequently applied in the California cases." Those cases (and others since decided) mostly involved statutes and ordinances. Many, though, dealt with administrative regulations. (See, e.g., *Levels* v. *Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 443, 447 [121 Cal.Rptr. 779] [Div. of Ind. Safety order; *accord: Short* v. *State Compensation Ins. Fund* (1975) 52 Cal.App.3d 104, 109, fn. 4 [125 Cal.Rptr. 15]; *Atkins* v. *Bisigier* (1971) 16 Cal.App.3d 414, 420 [94 Cal.Rptr. 49] [Dept. of Health reg.]; *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053, 1059 [84 Cal.Rptr.

---

[4]See our text following footnote 6, *infra*. We reject the trial court's suggestion that section 4242 contains mere guidelines. Its words are commands (e.g., "An officer shall not discharge a firearm" and "Firearms shall not be discharged"). Note also the section's detailed requirements as to notification, report, and investigation "whenever a member discharges a firearm (except at an approved range)."

27] [social welfare regs.]; *Nevis* v. *Pacific Gas and Electric Co.* (1954) 43 Cal.2d 626, 629 [275 P.2d 761][P.U.C. order]; *Peterson* v. *Permanente Steamship Corp.* (1954) 129 Cal.App.2d 579, 581 [277 P.2d 495] [Coast Guard reg.]; cf. *San Diego Gas & Electric Co.* v. *United States* (9th Cir. 1949) 173 F.2d 92, 93 [civil aeronautics reg.]; *Neiswonger* v. *Good Year Tire & Rubber Co.* (N.D.Ohio 1929) 35 F.2d 761, 763 [Sect. of Commerce rule].)

■ Here, however, it is argued that statewide or nationwide regulations on matters such as industrial safety and aeronautics are different from local regulations, at least when no city council, school board, or similarly "sovereign" entity has promulgated the regulations.[5] The argument has no merit. In California the local laws that prescribe safety, health, or other standards sometimes are promulgated as ordinances, sometimes as regulations. When the regulations have been duly prescribed and contain words that clearly are obligatory, to suggest that the Legislature in section 669 intended to distinguish between ordinance-form and regulation-form standards discloses a lack of understanding as to how modern governments work. (Cf. *Hopper* v. *Bulaich* (1945) 27 Cal.2d 431, 434 [164 P.2d 483] [road commissioner's permit]; Davis, Administrative Law: Cases-Text-Problems (6th ed. 1977) p. 509: "Officers should not have power to determine in each case in accordance with their momentary whims what overall policy they prefer. . . . [T]hat is the power that rulemaking should subtract.")

By no means have legislators in California been unsophisticated as to administrative regulations, as to differences between rulemaking and adjudication, as to rulemaking procedures that are practicable for state agencies but perhaps not yet for local agencies, as to parallel matters.[6] ■ Government Code section 811.6 defines regulation. It means "a rule, regulation, order or *standard,* having the force of law, *adopted by an employee* or agency . . . *of a public entity pursuant to authority vested by* constitution, statute, *charter or ordinance in such employee* to implement, interpret or make specific the law enforced or administered by the employee or agency" (italics added).

---

[5] See *Vallas* v. *City of Chula Vista* (1976) 56 Cal.App.3d 382, 387-88 [128 Cal.Rptr. 469], which we disapprove to the extent that its rulings are inconsistent with views expressed herein.

[6] See Hutchinson, *Rule Making Function of California Administrative Agencies* (1964) 15 Hastings L.J. 272; Lerch, *Comments on the California Rule-Making Process and the Effects Thereon of the California Environmental Quality Act of 1970* (1972) 5 U.C. Davis L.Rev. 309; Livingston, *Organizations and Administrative Practice—A Balance to the*

■ That definition surely includes standards for the use of weapons when the standards have the force of law[7] and were adopted, as they were here, by the public entity's employees (city manager and police chief), pursuant to authority vested by charter or ordinance to implement, interpret, or make specific the law administered by those employees and their subordinates.

■ The trial court found that, when Vershaw shot and killed plaintiffs' son, he "failed to comply with . . . [§ 4242]." Evidence Code section 669 applies, and the presumption of failure to exercise due care arose because the son's death "resulted from an occurrence of the nature of which . . . [§ 4242] was designed to prevent." (See § 669, subd. (a)(3).)

### III. *Evidence Code Section 669, Subdivision (b)(1)*

■ Our final question is whether the trial court erred when it failed to address the issue posed by Evidence Code section 669, subdivision (b)(1): Was the presumption that Vershaw failed to exercise due care because he violated the police manual rebutted by evidence that he did "what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law"?

---

*Corporate State?* (1974) 26 Hastings L.J. 89, 99-101; Newman, *Two Decades of Administrative Law in California: A Critique* (1956) 44 Cal.L.Rev. 190, 193; cf. California Administrative Mandamus (Cont.Ed.Bar 1966) page 399, appendix C; Code of Civil Procedure section 1094.6, subdivision (g).

[7]In part because of distinctions between the federal and the California administrative procedure acts (see *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 201-202, text preceding fn. 2 [149 Cal.Rptr. 1, 583 P.2d 744]), "force of law" when used by our Legislature differs from what some scholars who focus mostly on the federal statute have projected. (See, e.g., Davis on Administrative Law: Cases-Text-Problems, *supra*, pp. 224, 230 ["Interpretative and Legislative Rules"]; cf. *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 609 [69 Cal.Rptr. 20].)

We do not accept amici's suggestion that "finding liability on the basis of a departmental rule of conduct alone will simply deter police departments from making rules of conduct at all, because of their fear of imposing unnecessary civil liability." (Brief of No. Cal. ACLU et al. at p. 16, fn. 7.) (Cf. the Att. Gen.'s amicus brief at p. 3 ["police officers . . . require clear guidance"]; *San Jose Peace Officer's Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935 [144 Cal.Rptr. 638]; *Jones v. Marshall* (2d Cir. 1975) 528 F.2d 132, 140, fn. 15 [police training bulletin].)

Generally see Morris, *The Role of Administrative Safety Measures in Negligence Actions* (1949) 28 Tex.L.Rev. 143, 155; McGowan, *Rule-Making and the Police* (1972) 70 Mich.L.Rev. 659, 680 ["police rulemaking offers the possibility of defining—really for the first time—the rights of suspects"), 693 ("actions by an agency in violation of its own regulations are to be given no effect when the personal interests of those subject to agency action are adversely affected—and this is true whether or not the action in question would have been proper in default of a regulation on the subject.")

What is "the law" that those last two words comprehend? From sections 811 and 810.6 of the Government Code we learn that law includes not only legislative but also quasi-legislative measures. Section 4242 of the police manual is, of course, a quasi-legislative measure. (See too Gov. Code, § 11420.)

The trial court found that "at all pertinent times Officer Vershaw acted as a reasonable and prudent police officer in discharging the duties imposed upon him as a peace officer of the State of California." It also found that he violated the commands of section 4242. It did not, unfortunately, consider whether he "desired to comply" with that law. The sole evidence regarding his desire to comply suggests that he did not think of section 4242's command before shooting.[8] Since, as we have shown, his violation raised a presumption of negligence, he cannot be freed from liability without a judicial inquiry as to whether he could successfully rebut the presumption. That inquiry, implicit in section 669, subdivision (b)(1), was not made because the trial court disregarded section 669, subdivision (a).

The judgment for defendants is reversed.

Bird, C. J., Tobriner, J., and Mosk, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. As the majority opinion explains, at issue here is the applicability of Evidence Code section 669 and its presumption of negligence. We must decide whether noncom-

---

[8]Penal Code section 196 provides that "Homicide is justifiable when committed by public officers . . . when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest." Defendants argue that under section 196 homicide by a police officer is justifiable when any felony is involved, not just the "violent" felonies to which the police manual restricts the use of firearms. (But see *Kortum* v. *Alkire* (1977) 69 Cal.App.3d 325 [138 Cal.Rptr. 26]; *Long Beach Police Officers Association* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 373-374 [132 Cal.Rptr. 348].) We need not consider that argument. Even if section 196 permitted deadly force under these facts, it did not compel its use. Thus a desire to comply with that section could not rebut the presumption of negligence raised by a violation of section 4242 of the manual.

Nor need we consider the scope of section 196 for purposes of immunity under Government Code section 820.6, which protects a public employee who "acts . . . under the apparent authority of an enactment that is . . . inapplicable . . . except to the extent that he would have been liable had the enactment been . . . applicable." Even had section 196 referred to *any* felony, Vershaw could still be liable for violating the police manual regulation, which clearly forbade the shooting in this case. Therefore we do not reach the amici argument that section 196 is inapplicable because it provides a defense only to criminal liability, while Penal Code section 835a is the affirmative authorization of use of force by police officers ("reasonable force").

pliance with a police department manual, containing guidelines regarding the use of firearms by police officers, invokes the statutory presumption. As will appear, contrary to the majority's holding, I would conclude that section 669 is inapplicable.

Section 669 applies only to a statute, ordinance or regulation of a "public agency," and it is certainly arguable that a police department manual should not be considered a public agency regulation under that section. (Accord, *Vallas* v. *City of Chula Vista* (1976) 56 Cal.App.3d 382, 387-388 [128 Cal.Rptr. 469].) Yet, my objection to the majority's analysis focuses on an entirely different problem. We have held that section 669 requires a showing that the ordinance or regulation in question was "designed to protect persons in plaintiff's class from the type of injury which in fact occurred." (*Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 183, fn. 10 [101 Cal.Rptr. 908, 496 P.2d 1276]; see *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164-165 [95 Cal.Rptr. 623, 486 P.2d 151].) In other words, the regulation or other enactment must prescribe *a standard of care* by which to measure one's legal duty to others. The reason for the foregoing rule is clear: it would be highly improper and unfair to base a presumption of negligence solely upon the violation of an enactment which was not intended to create a duty of care.

In the present case, the trial court expressly found that the police manual was not intended as a standard of care, but was merely a set of guidelines describing departmental policies regarding firearm use. Specifically, the court found that the manual ". . . though it may serve as a guideline for the conduct of Long Beach police officers, does not constitute a minimal standard of care for the use of firearms by . . . police officers." The court further found that the officer's failure to comply with the manual ". . . does not constitute a negligent or a wrongful act, so long as his conduct was within the permissible limit of the California Penal Code and it was within such limits [since] . . . Officer Vershaw, in firing his weapon at Roland Peterson, used justifiable deadly force within the permissible limits of Section 196 of the California State Penal Code."

In the trial court's view, to which I fully subscribe, a presumption of negligence properly cannot be based upon violation of internal, departmental policies which were not intended as minimum standards of care. As stated in a recent case *involving the identical manual provision,* "The purpose of the regulation is to provide training and guidance to the officer so that he will not get into a situation where a plaintiff could claim that he used excessive force." (*Long Beach Police Officers Assn.* v. *City of Long*

*Beach* (1976) 61 Cal.App.3d 364, 376 [132 Cal.Rptr. 348].) In other words, the manual was intended to encourage restraint over and above the limits imposed by law, in order to protect the officer and his employer from civil liability. It is highly ironic, I suggest, that guidelines which were intended to *shield* against civil suits may now furnish the sole basis for *imposing* such liability.

The trial court's determination that the police manual was not intended to establish a minimum standard of conduct was so clearly correct that this plaintiff abandoned the point on appeal. As he stated in his opening brief before the Court of Appeal, the trial court *"correctly* ruled that the Police Department policy against . . . use of firearms did not rise to the level of a statute or ordinance and therefore invoke the doctrine of negligence *per se* . . . ." (Italics added.) Further, in his closing brief, plaintiff conceded that "there is *no dispute* as to the rule . . . that the violation of the Police Manual Procedure will not be deemed the equivalent of the violation of a statute or ordinance [under section 669] . . . ." (Italics added.)

Despite plaintiff's unqualified concession, however, the majority inexplicably resurrects the point. The obvious, and unfortunate, result of its present holding will be to inhibit the preparation and publication of sorely needed departmental guidelines on the subject of restraint in the use of deadly weapons. Indeed, respectable authorities share my concern in this regard. The American Civil Liberties Union (ACLU), along with several like organizations appearing herein as amici curiae, implore us to refrain from holding that violation of a police department manual may invoke a presumption of negligence. Amici observe that "A judgment finding liability on the basis of a departmental rule of conduct alone will simply deter police departments from making rules of conduct at all, because of their fear of imposing unnecessary civil liability." The American Bar Association (ABA) agrees: "Police administrators will need both support and encouragement from legislatures and courts in the development, implementation, and continual review of the administrative rule-making process . . . . [¶] In many instances, necessary administrative policies should reflect an effort by police administrators to require police officers to follow procedures *that are not necessarily required by the Constitution or by state law.* For example, *the formulation of policies* on protection of First Amendment rights, *on restrictions on the use of force,* or on equal protection in selective enforcement hopefully *will be more restrictive than existing statutes or interpretation of the law may require.* To stimulate such timely administrative policy-making, a determination by a

court of a violation of an administrative policy should not be the basis for excluding evidence in a criminal case . . . . Nor should a determination of violation necessarily provide for mandatory subsequent *civil* or criminal *liability* of the police officer involved. Aside from encouraging administrative rulemaking, this approach could have the collateral benefit of stimulating more prompt and effective administrative action by police agencies against police officers engaging in misconduct." (Italics added; ABA Project on Stds. for Crim. Justice, Stds. Relating to the Urban Police Function (1973) pp. 134, 137.)

The majority opinion bluntly rejects the foregoing policy and admonition asserted by both the ACLU and the ABA; no reason whatever is furnished in explanation thereof. (*Ante,* p. 246, fn. 7].)

It is entirely reasonable to conclude that the departmental manual at issue herein was designed to promote police procedures regarding firearm use which are considerably more restrictive than the procedures presently required by law. (See, e.g., Pen. Code, § 196 [justifiable homicide by police officers]; *Murphy* v. *Murray* (1925) 74 Cal.App. 726 [241 P. 938].) Indeed, under present law, an officer is *immune* from civil liability if he acts in good faith under the apparent authority of an enactment such as Penal Code section 196. (Gov. Code, § 820.6.) As the trial court noted, the evidence failed to show any intent by the city or its police department to modify these existing legal requirements or to declare a minimum standard of care for purposes of measuring an officer's legal duty of care toward third persons. Accordingly, section 669 was clearly inapplicable.

I would affirm the judgment.

Clark, J., and Manuel, J., concurred.

Respondents' petition for a rehearing was denied July 12, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.