BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE JOHN L. BURTON, PRESIDENT PRO TEMPORE OF THE STATE SENATE, has requested an opinion on the following question:
Is the governing board of a jointly administered trust fund, whose members are appointed equally by a city and a labor union representing city employees and whose purpose is to address labor-management issues relating to the health, safety, and training of city employees, required to hold its meetings open to the public?
 CONCLUSION
The governing board of a jointly administered trust fund, whose members are appointed equally by a city and a labor union representing city employees and whose purpose is to address labor-management issues relating to the health, safety, and training of city employees, is not required to hold its meetings open to the public.
 ANALYSIS
We are informed that a city public works department ("Department") and a labor union representing Department employees ("Union") have established a joint safety institute ("JSI") pursuant to the terms of a collective bargaining agreement. JSI's purpose is to promote worker safety and training. Under the agreement, the Department places funds in an irrevocable trust ("Trust") to be used by JSI. The Trust and its funds are managed by JSI's governing board of trustees ("Board"), whose members are appointed equally by the Department and by the Union.
We are asked whether the Board is required to hold its meetings open to the public under the provisions of the Ralph M. Brown Act (Gov. Code, §§ 54950-54962; "Brown Act").[1] We conclude that the Board's meetings need not be held in public.
The general requirement of the Brown Act for local agencies to hold their meetings open to the public is set forth in section 54953, subdivision (a):
 "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."
The key statute requiring our interpretation is section 54952, which defines a "legislative body" of a local agency as follows:
"As used in this chapter, `legislative body' means:
 "(a) The governing body of a local agency or any other local body created by state or federal statute.
 "(b) A commission, committee, board, or other body of a local agency, whether permanent or temporary, decision-making or advisory, created by charter, ordinance, resolution, or formal action of a legislative body . . . .
 "(c)(1) A board, commission, committee, or other multimember body that governs a private corporation, limited liability company, or other entity that either:
 "(A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity.
 "(B) Receives funds from a local agency and the membership of whose governing body includes a member of the legislative body of the local agency appointed to that governing body as a full voting member by the legislative body of the local agency.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Accordingly, if the Board qualifies as a "legislative body of a local agency" as defined in the Brown Act, it must hold its meetings open to the public.
Here, the city is responsible for funding JSI's activities, the purpose of JSI is to benefit city employees in the performance of their work activities, and the city appoints half of the Board's members. Do these factors make the Board a "legislative body of a local agency"?
Preliminarily, we note that the Board does not constitute a "legislative body" under the language of section 54952, subdivision (b), since half of its members are appointed by the Union as part of the collective bargaining agreement. It thus cannot be considered a "board . . . of a local agency," such as a city planning commission or county civil service commission, which has all members appointed by the local agency. (See Cal. Attorney Gen. Office, The Brown Act: Open Meetings for Local Legislative Bodies (2003) pp. 5-6; cf. Joiner v. City of Sebastopol (1981) 125 Cal.App.3d 799 [city council and city planning commission each appointed representatives to advisory body of the city council].)
And, although JSI is funded by the city, the Board cannot be considered a "legislative body" under section 54952, subdivision (c)(1)(B), since we are informed that the Board does not include a "member of the legislative body of the local agency."
Our inquiry is thus limited to an examination of the terms of section 54952, subdivision (c)(1)(A): is the Board an entity that exercises "authority that may lawfully be delegated [to it] by the elected governing body"? In answering that question, we look first to the terms of the Trust.
The Trust contains the following provision, which confirms that the Department has a continuing and independent duty to provide for the safety and health of its employees notwithstanding the creation of JSI:
 "Nothing in this Agreement shall be deemed or construed in any way to alter, amend, or modify any provisions of any collective bargaining agreements by and between the [Department] and the [Union]. By entering into this Trust Agreement, the [Union] does not assume, and shall not be liable for breach of, any duty or responsibility the [Department] may have to provide a safe and healthful workplace. The Joint Safety Institute is an independent body, and not the agency, subsidiary, or affiliate of either the [Department] or the [Union]."
Consistent with this Trust provision is the Department's responsibility for the health and safety of its employees, which responsibility cannot be legally delegated to another entity. (See Levels v. Growers Ammonia Supply Co., (1975) 48 Cal.App.3d 443, 451-452 ["Employers are under a nondelegable duty to provide employees with a safe place to work and to comply with the applicable safety laws of the Labor Code"]; see also Lab. Code, §§ 6400 [employer must furnish safe and healthful employment and worksite], 6401 [employer must furnish safety devices and safeguards, and must use practices, means, methods, operations, and processes adequate to ensure safety of employment activity and place of employment], 6402 [employer shall not require or permit employee to be in any employment activity or place of employment which is unsafe or unhealthy].)
We view the Board's activities and powers as providing an extension of the collective bargaining process between the Department and the Union. That is, the Board's decisions and actions in administering the Trust reflect evolving agreements between the Department and the Union about how to address employee health, safety, and training. In this regard, we note that under the federal Labor Management Relations Act ( 29 U.S.C. § 141-187) employer-employee safety committees, such as the JSI, are subject to protection as "labor organizations" (29 U.S.C. § 152(5)) from unlawful interference by the employer. (See Electromation, Inc. v. N.L.R.B. (7th Cir. 1994) 35 F.3d 1148, 1158-1161; N.L.R.B. General Counsel's Memorandum in Vanalco, Inc., 1996 N.L.R.B.G.C.M. Lexis 24 (Aug. 21, 1996).) Moreover, treatment of the Board's meetings as not subject to the Brown Act would be consistent with similar treatment for most labor-management negotiations, or "meet-and — confer sessions," conducted between designated representatives of a local agency and designated representatives of a union. (See 61 Ops.Cal.Atty.Gen. 1, 8 (1978) ["the Legislature in all probability did not intend to require bargaining committees to negotiate in public"].)
Hence, the nature of JSI and the powers of its Board are unlike those of the private entities found subject to the terms of section 54952, subdivision (c)(1)(A), by the courts and in our prior opinions. (See, e.g., Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist. (2001) 87 Cal.App.4th 862 [private entity "was formed and structured in such a way as to take over administrative functions that normally would be handled by City" and "City . . . retained plenary decision-making authority over the . . . activities"]; International Longshoremen's Warehousemen's Union v. Los Angeles Export Terminal, Inc. (1999)69 Cal.App.4th 287 [city delegation of authority to private entity for the development and operation of harbor terminal]; 85 Ops.Cal.Atty.Gen. 55 (2002) [operation of and programming for public-access cable television channel]; 81 Ops.Cal.Atty.Gen. 281 (1998) [administration of community redevelopment agency's housing activities].) Here, in contrast, the Board may perform only limited collaborative functions as part of the collective bargaining process between the Department and the Union.
We therefore conclude that the governing board of a jointly administered trust fund, whose members are appointed equally by a city and a labor union representing city employees and whose purpose is to address labor-management issues relating to the health, safety, and training of city employees, is not required to hold its meetings open to the public.
[1] Unless otherwise indicated, all statutory section references are to the Government Code.