[No. A024640. First Dist., Div. Three. May 8, 1986.]

MARY ANN POSEY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Appellant.

## COUNSEL

Michaud, Weber & De Vries, Michael C. Weber and Daniel G. Herns for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Tyler B. Pon, Deputy Attorney General, for Defendant and Appellant.

## OPINION

**MERRILL, J.**—Under the facts of this case we decide that the failure of California Highway Patrol (CHP) officers to stop and inspect or to stop and remove a vehicle parked alongside the traveled roadway does not create a basis for liability on the part of the CHP, and thereby the State of California

(State), in that there is neither a mandatory duty nor a special relationship which obligates these officers to do the aforesaid acts.

Mary Ann Posey (Posey), appeals from the judgment of dismissal entered upon the trial court's sustaining of a demurrer to the second amended complaint without leave to amend.

Pursuant to the court's order sustaining the demurrer and allowing the State to recover all allowable costs, the State filed a memorandum of costs and disbursements. Thereafter, Posey filed a motion to tax costs which was granted. State appeals from the trial court's order granting Posey's motion to tax costs.

## I

As we are reviewing a judgment entered pursuant to an order sustaining a demurrer, we accept the material facts as set forth in the complaint as true. (*Schneider* v. *Union Oil Co.* (1970) 6 Cal.App.3d 987, 990 [86 Cal.Rptr. 315].)

On December 7, 1979, at approximately 11:30 a.m., a 1966 Chrysler was parked on Highway 280 in San Jose, near the Winchester Boulevard entrance. The car was parked off the traveled roadway but on the shoulder next to the far right lane.

CHP officers drove past the 1966 Chrysler as they patrolled Highway 280 but failed to stop and inspect the vehicle or remove the vehicle. California Highway Patrol General Order (HPGO) No. 100.58 provides: "1. (a) Each Officer performing patrol duty shall inspect all vehicles which appear to be abandoned, unlawfully parked, or disabled within the geographical area of Departmental responsibility. [¶] (b) Vehicles shall be removed when authorized by law. [¶] (c) CHP 422 [a form] may be used as a warning for parking violations."

At approximately 12:45 a.m. on December 8, 1979, Posey was a passenger in a 1974 Mercury which collided with the 1966 Chrysler. As a result of the collision, Posey suffered physical and emotional injuries.

Posey alleges that the State of California, through its agents and employees, certain CHP officers, is liable for her injuries in that HPGO No. 100.58 created a mandatory duty on the part of the CHP officers to stop and inspect and to remove the 1966 Chrysler and that the failure to perform this duty constituted negligence. The State successfully demurred to Posey's second amended complaint on the ground that it fails to state a cause of

action. Posey argues on appeal that a cause of action is stated as the CHP's failure to inspect and failure to remove the parked vehicle created liability pursuant to Government Code section 815.6.

## II

■ Preliminarily we note that on appeal from an order sustaining a demurrer, an appellate court is required to construe the complaint liberally to determine whether, assuming the facts pleaded to be true, a cause of action has been stated. (*Jones* v. *Oxnard School District* (1969) 270 Cal.App.2d 587, 590 [75 Cal.Rptr. 836].)

In the instant case we are presented with the threshold question of whether, under the circumstances of this case, the State owes a duty of due care to Posey. We must consider whether a cause of action is stated on the theory alleged by Posey, i.e., that the CHP owes her a mandatory duty by virtue of HPGO No. 100.58. We must also consider whether a cause of action is stated on the theory that because of a special relationship between the parties, the State owed a duty of due care to Posey.

### A. *Liability Pursuant to the Special Relationship Doctrine.*

■ "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is *some relationship* between them which gives rise to a duty to act." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137], citing Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821, italics added.) Nor does one owe a duty to control the conduct of another or to warn those endangered by such conduct absent a special relationship between the defendant and the plaintiff or defendant and a third person which relationship imposes a duty on the defendant. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894], citing Rest.2d Torts (1965) § 315; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

This rule that one owes no duty to come to the aid of another is equally applicable to law enforcement personnel in their conduct of routine traffic investigations. (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.) ■ A special relationship does not exist between members of the CHP and the motoring public generally. (*Ibid.*) However, when the State, through its agents, voluntarily assumes a protective duty toward a particular member of the public, and undertakes action on behalf of that individual, reliance

is induced and the State is held to the same standard of care as a private person or organization. (*Ibid.;* see also *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 943 [41 Cal.Rptr. 508].)

In the case at bench, the alleged misconduct is the failure of the CHP officers to either stop and inspect or to stop and remove the vehicle parked adjacent to the roadway. ▪ Where the purported injury is a result of an omission, or nonfeasance, the State may be held liable for the negligent omission if a special relationship existed between the State's employee and the plaintiff. (*Bonds* v. *State of California* ex rel. *Cal. Highway Patrol* (1982) 138 Cal.App.3d 314, 318 [187 Cal.Rptr. 792], citing *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 779 [139 Cal.Rptr. 82]; see also *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 159 [144 Cal.Rptr. 794].)

The cases that have found a special relationship to exist have involved situations of the dependency or reliance by the plaintiff upon the defendant, or some conduct on the part of the defendant that either created or changed the risk to a known person.

In *Mann* v. *State of California, supra,* 70 Cal.App.3d 773, CHP officers came to the assistance of stranded motorists whose cars were stopped in the speed change lane of a freeway. The officers parked their car directly behind the stalled cars and turned on their flashing amber light. The motorists were standing in between the stalled cars. The CHP officers then called a tow truck for the motorists. Only a few minutes after the tow truck arrived, and without advising the motorists of their departure, the officers left the stranded motorists and resumed their patrol. The officers also failed to put out protective flares on the freeway before leaving the motorists. (*Id.,* at pp. 776-777.)

A few minutes later the motorists were injured when a passing car struck one of the stalled cars. (*Id.,* at p. 777.) The plaintiff was one of the injured motorists.

The Court of Appeal ruled that liability may attach to the State for the officers' negligent omissions because a special relationship had been created between the plaintiff and the officers when the officers stopped to investigate the plight of the motorists and apprised themselves of the foreseeable danger to the motorists by passing traffic. This special relationship imposes a duty upon the highway patrolmen to protect these specific persons from this specific foreseeable risk of harm about which they were informed. (*Id.,* at p. 780.) "While no special relationship may exist between members of the California Highway Patrol and the motoring public generally, or between

the Patrol and stranded motorists generally" under the set of facts presented in *Mann*, a special relationship will arise which may attach liability to the defendant patrolmen if they fail to exercise ordinary care to protect the motorists. (*Ibid.*) The holding in *Mann* has been characterized as a "simple application of the 'good Samaritan' doctrine," i.e., the duty of care that attaches to one who volunteers assistance. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208.)

In *Morgan* v. *County of Yuba, supra,* 230 Cal.App.2d 938, the Court of Appeal, delineating one exception to the special relationship rule, held a county may be held liable for its employees' negligent omissions.

The facts alleged in *Morgan* were that the Yuba County Sheriff and some of his deputies arrested one Mr. Ashby upon the decedent's complaint. The individual had threatened the life of plaintiffs' decedent. The sheriff and the deputies fully cognizant of these threats, promised to warn the decedent immediately upon Mr. Ashby's release on bail. The decedent was never warned and as a result she was killed by Mr. Ashby. (*Id.,* at pp. 940-941.)

After setting out the general rule that "'in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another'" the Court of Appeal stated that one exception to the rule is when there has been a voluntary or gratuitous undertaking upon which the plaintiff has reasonably relied to his or her detriment. (*Id.,* at pp. 943-944.) Finding that it is likely that the plaintiffs could allege facts which fall squarely within this exception, the *Morgan* court held the county may be liable for its employee's non-feasance.

Our Supreme Court in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] held that the therapists who heard the threats of an assailant toward a specific individual had a duty to exercise due care to warn the potential victim. This duty arose from the special relationship between patient and doctor which is recognized as supporting an affirmative duty for the benefit of the patient *and* third persons. (*Id.,* at p. 436.)

In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the Supreme Court also found there to be a special relationship giving rise to a duty to inform on the part of the State. The plaintiff in *Johnson* was attacked by a minor placed in her foster home by the California Youth Authority. The plaintiff was not warned of the minor's known homicidal tendencies. The alleged nonfeasance in *Johnson* was the failure to warn. The court stated: "As the party placing the youth with Mrs.

Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the parolee's history or character. [Citations.] These cases impose a duty upon *those who create a foreseeable peril,* not readily discoverable by endangered persons, to warn them of such potential peril." (*Id.,* at pp. 785-786, italics added, fn. omitted.)

On the other hand, recovery has been denied for alleged negligent omissions where a special relationship has not been found to exist between law enforcement personnel and an individual.

*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5] involved a plaintiff's decedent whose estranged husband threatened to kill her. Plaintiff's decedent called the San Jose Police Department informing them of the situation and requesting aid. The department refused to come to her assistance. Shortly thereafter the estranged husband stabbed her to death. (*Id.,* at p. 8.)

The Court of Appeal held that the facts did not support the theory of liability based on a special relationship between the police department and the decedent. The court found it significant that those cases which had found the existence of a special relationship all had a common theme of the voluntary assumption of a duty by the public entity or official toward the injured party. (*Id.,* at pp. 9-10.) "Absent an indication that the police had induced decedent's reliance on a promise, express or implied, that they would provide her with protection, it must be concluded that no special relationship existed and that appellant has not stated a cause of action." (*Id.,* at p. 10.)

In *Winkelman* v. *City of Sunnyvale* (1976) 59 Cal.App.3d 509 [130 Cal.Rptr. 690], the Court of Appeal held that the plaintiff did not sufficiently allege a special relationship giving rise to a duty to assemble evidence for future civil litigation. The allegations revealed that the plaintiff was driving on a freeway when she was struck from behind by a pickup truck. The impact caused her car to go into oncoming traffic. She collided with another car. When the police arrived the plaintiff and the other driver were both unconscious. Meanwhile, the driver of the pickup truck stopped at the city police station and reported that he may have been involved in an accident on the freeway. Because the police had not yet learned that a pickup truck had been involved in the freeway accident, the driver was allowed to leave. (*Id.,* at p. 511.) Basing her claim of negligence on the city's failure to secure identification from the pickup truck driver, the plaintiff alleged that she was damaged by virtue of the frustration of a valid cause of action. (*Ibid.*)

The *Winkelman* court found there to be no duty on the part of the defendant to exercise due care on behalf of plaintiff's interests. The court reasoned that the harm plaintiff suffered because of the truck's involvement occurred *before* the officers arrived to begin investigating the accident. The alleged negligence was nonfeasance, the officers' failure to protect her from the effects of events which had already occurred. Since, absent a special relationship, there is no liability in tort for nonfeasance by one who has not created a peril, the officers in *Winkelman* owed no duty of due care to the plaintiff. (*Id.,* at p. 512.) A special relationship did not exist there.

Even under an alleged set of facts as egregious as in *Davidson v. City of Westminster, supra,* 32 Cal.3d 197, the court failed to find a duty of care owed by the defendant to plaintiff, absent a special relationship. In *Davidson,* a laundromat was placed under surveillance by police officers after three women had been stabbed there on earlier occasions. The plaintiff was present in the laundromat the night it was being watched. The police officers were aware of her presence and of the stabbing suspect's presence. They did not warn her. She was stabbed four times. (*Id.,* at p. 201.)

Relying upon the general common law rule set forth in section 315 of the Restatement Second of Torts (*ante,* p. 842), the Supreme Court held there was neither a special relationship between the assailant and the police officers nor between the plaintiff and the police officers. The Supreme Court reiterated that none of the factors creating a special relationship between the police and the plaintiff were present. The police did not create the peril. Nor did their conduct in any way change the risk of harm to plaintiff. Further, since plaintiff was unaware of their presence, she did not rely on the police for protection. (*Id.,* at pp. 206-208.)

Finally, in *Bonds v. State of California* ex rel. *Cal. Highway Patrol, supra,* 138 Cal.App.3d 314, the Court of Appeal found there to be no special relationship between the CHP and a motorist which would give rise to a duty on the part of the CHP to either remove a vehicle parked at the side of the roadway or to warn others of its presence. In *Bonds* a motor home was parked on the side of the road to repair or remove a Ford Mustang, which had been parked on the side of the road for some 24 hours. Bonds in driving his vehicle struck and propelled the motor home into the Ford Mustang, causing two explosions which resulted in the death of two passengers of the motor home. Bonds was named as a defendant in a wrongful death action and he filed a cross-complaint against the State for indemnity and contribution. In his action against the State, Bonds contended that the CHP was negligent in failing to remove the Ford Mustang from the highway or to warn others on the highway. The demurrer of the State was sustained without leave to amend on the ground that the cross-complaint of Bonds

failed to state a cause of action. The judgment entered by the trial court in favor of the State was affirmed by the Court of Appeal.

The appellate court discussed the lack of a special relationship when there is no act or omission on the part of the defendant that either created or changed a risk to a known person. "Here, there is nothing in the actions of the CHP that could have caused Bonds or the other motorists involved to rely on CHP protection. The CHP had not investigated the plight of specific persons; it merely ticketed an illegally parked car. Its action did not place Bonds in a position of foreseeable danger that would not be readily discoverable by him if he were exercising due care. Nor did the CHP's actions contribute to, increase or change a risk which otherwise existed. [¶] To impose a duty upon the CHP such as pleaded by Bonds would serve to make the CHP virtually an insurer of safety on the highway instead of an enforcer of the vehicle code. Such a duty would be unduly burdensome on the public fisc and next to impossible to implement." (*Id.*, at pp. 319-320, fn. omitted.)

■ Applying the general principles of law stated in the decisions reviewed above, we find that Posey has not stated a cause of action as she fails to establish a duty of care based on a special relationship. The special relationship is a necessary element in the instant case as the alleged misconduct, the failure to remove or inspect the parked vehicle, is clearly nonfeasance. None of the factors which courts have found to be necessary for the creation of a special relationship between parties are present. Under the alleged facts the CHP owed no duty to Posey as a member of the general public to remove or inspect the parked vehicle. Further, the CHP took no action which allowed Posey to reasonably rely or depend upon their protection. There is no allegation that the CHP determined that the parked vehicle constituted a hazard to traffic on the highway. The CHP did not in any way create or change the risk of harm to Posey as a known individual. Neither did the CHP take any action which would apprise it of the danger presented to Posey as a known individual, by this vehicle. Posey was a member of the general public and as such a special relationship did not exist between her and the CHP. Nor does it appear that the complaint could be amended to state a cause of action in this regard.

B. *Statutory Duty to Inspect or Remove Disabled Vehicle.*

We next examine the allegation in Posey's second amended complaint that an internal CHP guideline, HPGO No. 100.58, places a mandatory duty upon the CHP officers, and the State within the meaning of section 815.6 of the Government Code. Posey contends that this internal guideline required the CHP officers to stop and inspect this vehicle and that it required the

officers to remove this vehicle. Their failure to do so, Posey argues, created liability on the part of the CHP. The State argues that the CHP owes no mandatory duty to inspect or remove the vehicle, and that statutory immunities to liability attach to their decision to remove disabled vehicles.

We hold that HPGO No. 100.58 does not create a mandatory duty, within the meaning of Government Code section 815.6, on the part of the CHP to inspect or remove a vehicle. The inspection and removal of disabled vehicles are discretionary acts and are therefore covered by the statutory immunities as set forth in Government Code section 820.2.[1]

■ Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Liability is found under Government Code section 815.6 only if all three of the requisite elements are met. First, there must be an *enactment* which imposes a mandatory, not discretionary, duty. Second, the enactment must be intended to protect against the kind of risk of injury suffered by the individual asserting liability under section 815.6. Finally, the breach of the mandatory duty must be a proximate cause of the injury suffered. (*State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 854-855 [197 Cal.Rptr. 914], citing *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 907-909 [136 Cal.Rptr. 251, 559 P.2d 606]; *Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 619-620 [188 Cal.Rptr. 205]; *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656 [130 Cal.Rptr. 230]; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707-708 [141 Cal.Rptr. 189].)

■ The term mandatory duty, as used in Government Code section 815.6, means an obligatory duty which a governmental entity is required to perform, in contrast with a permissive power which a governmental body may choose or not choose to exercise. (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 908.) ■ An "enactment" is either a constitutional provision, statute, charter provision, ordinance or regulation. (Gov. Code, § 810.6.) ■ A "regulation" is a rule, regulation, order or standard, which has the "force of law," which has been adopted by an employee or

---

[1]Government Code section 820.2 provides as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

agency of the United States or of a public entity pursuant to authority vested by constitution, statute, charters or ordinance in such employee or agency to implement, interpret, or make specific the law enforced or administered by the employee or agency. (Gov. Code, § 811.6.) Finally, regulations having the "force of law" have been defined as "'those regulations . . . that are promulgated pursuant to an authorization to "implement, interpret, or make specific" a law being enforced or administered by the promulgator. This excludes informal "guides," "policy manuals," and "recommended procedures" helpful in establishing the standards of statutes, but lacking the force of law. . . .'" (*Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 609 [69 Cal.Rptr. 20], quoting Van Alstyne, Cal. Government Tort Liability, p. 492.)

 HPGO No. 100.58 does not impose a mandatory duty to inspect and remove vehicles parked at the side of a highway as it is not a regulation having the force of law and is not, therefore, an enactment within the meaning of Government Code section 815.6. This internal guideline has not been adopted by the CHP pursuant to the authority vested in it by statute. Vehicle Code section 2402 provides that the commissioner of the CHP "may make and enforce such rules and regulations as may be necessary to carry out the duties of the department. Rules and regulations *shall be adopted,* amended, or repealed *in accordance with the Administrative Procedure Act,* commencing with Section 11370 [now section 11340] of the Government Code." (Italics added.) As the State points out, it is clear that HPGO No. 100.58 is not a regulation with the force of law as it has not been adopted in accordance with the Administrative Procedure Act. If the commissioner of the CHP had adopted this internal guideline as a regulation, it would appear in the California Administrative Code.[2] It does not appear there. Nor is reference to it made there.

 The pertinent enactment which concerns us here is Vehicle Code section 22651, which provides that a peace officer, including a member of the CHP, who is engaged in directing traffic or enforcing parking laws and regulations, "*may* remove a vehicle from a highway located within the territorial limits in which the officer or employee may act under any of the following circumstances: . . . [¶] (b) When any vehicle is parked or left standing upon a highway in a position so as to obstruct the normal movement

[2]Government Code section 11343 provides in part that "[e]very state agency shall: (a) Transmit to the office for filing with the Secretary of State a certified copy of every regulation adopted by it . . . ."

Government Code section 11344 provides in part that the Office of Administrative Law "shall . . . (a) Provide for the publication of the periodic compilation of adoption, amendment, or repeal of regulations, which shall be known as the California Administrative Code. . . . [¶] (e) Provide for the incorporation by appropriate reference of regulations which are impractical to include into the Administrative Code."

of traffic or in a condition *so as to create a hazard* to other traffic upon the highway.'' (Italics added.) Construing this statute in a reasonable fashion and attributing to it its ordinary and proper meaning (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244]), we find the conclusion inescapable that the inspection and removal of disabled vehicles are acts discretionary in nature. The meaning of the word ''may'' in the statute is plain. It affords the CHP officer the permissive authority, not an obligatory duty, to remove a vehicle.

Like the case at bench, the Court of Appeal in *Bonds* decided the question of the CHP's duty to either investigate or remove a vehicle parked at the side of the roadway. (*Bonds* v. *State of California* ex rel. *Cal. Highway Patrol, supra,* 138 Cal.App.3d at p. 321.) The court found that the decision to investigate and the decision to remove a vehicle are purely discretionary acts. (*Id.,* at pp. 321-322.) While a duty of due care may arise once law enforcement personnel have stopped to investigate a situation, the *Bonds* court did not find itself presented with such a situation. (*Id.,* at pp. 320-321, citing *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 87-91 [172 Cal.Rptr. 461].)

Further, with regard to the removal of the vehicle the court stated ''[n]or *did the CHP have a mandatory duty to remove the stranded vehicle* from the highway. Indeed, Vehicle Code section 22651, subdivision (b) *permits rather than requires removal* of vehicles that are obstructing traffic or creating a hazard.'' (*Id.,* at p. 321, italics added, fn. omitted.) ''[The] decision to remove or not to remove a stranded vehicle, without more, is thus a discretionary action and comes within the immunity described in Government Code section 820.2.'' (*Id.,* at p. 322.) The CHP has many duties which benefit the public but in most instances it must be vested with discretion as to the priorities to be followed in the performance of those duties.

Posey relies heavily on a case which fails to support her argument that HPGO No. 100.58 bears the ''force of law.'' In *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238 [155 Cal.Rptr. 360, 594 P.2d 477], the Supreme Court held that a municipal police department manual, constitutes a ''regulation'' within the presumptive negligence rule codified in section 669 of the Evidence Code. Posey's reliance on *Peterson* is misplaced as it is clearly distinguishable from the case at bench. The manual in *Peterson* was adopted pursuant to a section of the Long Beach City Charter which provides: '''''[t]he City police department shall be governed at all times by such rules and regulations as the City Manager may prescribe.''''' (*Id.,* at p. 242, fn. 2.) As the Supreme Court stated in this regard: ''Government Code section

811.6 defines regulation. It means 'a rule, regulation, order or *standard, having the force of law, adopted by an employee* or agency . . . *of a public entity pursuant to authority vested by* constitution, statute, *charter or ordinance in such employee* to implement, interpret or make specific the law enforced or administered by the employee or agency' (italics added). [¶] That definition surely includes standards for the use of weapons when the standards have the force of law and were adopted, as they were here, by the public entity's employees (city manager and police chief), pursuant to authority vested by charter or ordinance to implement, interpret, or make specific the law administered by those employees and their subordinates." (*Id.,* at pp. 245-246, fn. omitted.) In contrast, the CHP in the instant case failed to adopt HPGO No. 100.58 in accordance with the pertinent statutory authority. Furthermore, unlike the instant case, the *Peterson* court was not concerned with a statutory provision which specifically declares the act or omission in question to be discretionary in nature.

We also distinguish our Supreme Court's recent opinion in *Clemente* v. *State of California* (1985) 40 Cal.3d 202 [219 Cal.Rptr. 445, 707 P.2d 818]. In that case, the court considered whether instructional error had occurred by reason of the trial court's presumption of negligence instruction in a trial which concerned the alleged negligence of the State of California and a highway patrol officer. The officer purportedly failed to follow procedures set forth in the Highway Patrol Accident Investigation Manual and, as a result, the identity of the motorcyclist who injured the plaintiff was never learned. It was alleged that, because of the officer's omissions, the plaintiff suffered damages by being prevented from obtaining compensation from the apparent tortfeasor.

The presumptive negligence instruction given was as follows: "'If you find that defendant Arthur Loxsom violated any provisions of the California Highway Patrol Accident Investigation Manual and that such violation was a legal cause of injury to the plaintiff, you will find that such violation was negligence.'" (*Clemente* v. *State of California, supra,* 40 Cal.3d at p. 214.)

In holding that the trial court did not err in giving this instruction, the Supreme Court declined to consider the question of whether the investigation manual had the force of law because the issue was raised for the first time on appeal. The Supreme Court stated: "Upon petition for rehearing, defendant contended that the California Highway Patrol Accident Investigation Manual was not adopted in accordance with the Administrative Procedure Act . . . and that, therefore, it did not have the force of law. This contention is made for the first time on appeal on petition for rehearing and, whatever its merits, is untimely. [Citation.]" (*Clemente* v. *State of California, supra,* p. 216, fn. 6.)

As the CHP's inspection and removal of vehicles parked at the side of the roadway is a discretionary act, under Vehicle Code section 22651, subdivision (b), the immunity as provided in section 820.2 of the Government Code is fully applicable. We thus agree with the trial court that a cause of action against the individual officers, the CHP and the State is not stated.

### III

We now review the State's appeal from the trial court's order taxing costs. The memorandum of costs and disbursements filed by the State included the fees charged by Posey's expert witnesses for the taking of their depositions. Pursuant to Posey's motion the trial court disallowed these fees, which totalled $3,115.90, in its order taxing costs. The State argues on appeal that this order should be reversed as the cost of a deposition, taken in good faith and pursuant to statute, is an allowable cost. Further, the State contends that section 1032.7 of the Code of Civil Procedure, which entitles the prevailing party to recover the reasonable cost of taking and transcribing depositions, enables the State to recover expert witness fees here. The State's arguments are without merit.

 The right to an award of costs is governed wholly by statute. (*La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 312 [19 Cal.Rptr. 479, 369 P.2d 7].) Code of Civil Procedure section 1033 provides that the allowable costs to the prevailing party are only those "necessarily incurred in the action or proceeding." It has long been the rule that the fees of experts employed by one party are not allowable as costs. (*Rabinowitch* v. *Cal. Western Gas Co.* (1967) 257 Cal.App.2d 150, 161 [65 Cal.Rptr. 1].) This rule was codified in Government Code section 68092.5, subdivision (a), which prohibits expert witness fees in addition to those fixed by law, and incurred in the taking of a deposition or in providing testimony in a civil action, from being recovered as allowable costs or disbursements. We are not concerned here with certain exceptions to this rule as provided in Code of Civil Procedure section 998.

 We also note that a trial court's order taxing costs is reviewed by this court under the standard of abuse of discretion. (*Kern County* v. *Galatas* (1962) 200 Cal.App.2d 353, 360 [19 Cal.Rptr. 348].) Absent a showing of abuse of discretion, the trial court's allowance or disallowance of costs will not be disturbed on appeal. (*Ibid.*)

In making its argument that expert fees should be considered as costs necessarily incurred in the taking of these depositions, the State cites to the court a line of cases which fail to address the question of expert witness fees. The cases of *Simpson* v. *Gillis* (1934) 1 Cal.2d 42, 55 [32 P.2d 1071],

and *Hughes* v. *Hughes* (1920) 49 Cal.App. 217, 218 [193 P. 148], simply hold that the question of whether the taking of a deposition was necessary or in good faith is primarily a question of fact for the trial court. The case of *Welch* v. *Alcott* (1918) 178 Cal. 530, 532 [174 P. 34], holds that the determination of whether the cost of taking a deposition which is not used at trial is an allowable cost is a matter within the trial court's discretion. Finally, both *Hoge* v. *Lava Cap Gold Mining Corp.* (1942) 55 Cal.App.2d 176, 187-188 [130 P.2d 470], and *Marocco* v. *Ford Motor Co.* (1970) 7 Cal.App.3d 84, 97-98 [86 Cal.Rptr. 526], merely hold that whether attorneys' travel expenses to and from a deposition is a necessarily incurred cost is within the discretion of the trial court. These cases fail to support the State's position that the expert witness fees should be included.

■ Neither is the State aided by section 1032.7 of the Code of Civil Procedure. This statute provides: "Any person allowed costs under the provisions of this chapter shall, in addition to other costs, be entitled to the reasonable cost of taking and transcribing depositions, together with the reasonable cost of one copy of each such deposition, unless it shall appear to the court that the taking of such deposition was unnecessary, and in addition the reasonable cost of one copy of all depositions taken by the party or parties against whom such costs are allowed." The State urges that this phrase "reasonable cost of taking and transcribing depositions" should be construed so as to include the fees paid to the experts herein. Reading the statute in a reasonable light which conforms with the apparent purpose and intent of the Legislature, as we are required (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617]), it is clear that section 1032.7 was not intended to specifically include fees charged by expert witnesses among those costs to which the prevailing party is entitled. Such an interpretation would be in direct conflict with the clear directive of section 68092.5 of the Government Code.

The judgment of dismissal is affirmed. The order granting motion to tax costs is affirmed. Posey to bear her costs on appeal. State to bear its costs on appeal.

Scott, Acting P. J., and Barry-Deal, J., concurred.